REDMANN, Judge.
Defendants appeal from a judgment awarding plaintiff workmen’s compensation benefits for permanent total disability and penalties and attorney’s fees.
Defendants argue plaintiff’s injury did not occur in the course and arise out of plaintiff’s employment; that plaintiff is not permanently and totally disabled; that penalties were improperly imposed.
Plaintiff was the only non-medical witness at trial. He testified he was, at the time of the accident, a Field Sergeant and Acting Lieutenant of the New Orleans Police Department. Having just completed a 3:00 to 11:00 p. m. tour of duty on the day of the accident, he was still in uniform but was “off duty” and going home in his own car when his injury occurred. As he crossed the top of the I — 10 bridge over the Industrial Canal in the city, he came upon a head-on automobile collision on an exit ramp. Plaintiff was traveling in the same direction as the exiting car. As he approached, he saw that the woman driver of the exiting car had crashed into her windshield and was bleeding profusely. The driver of the other car, which had improperly tried to enter the expressway through an exit, was staggering about the roadway. Plaintiff parked his car about 20 yards behind the wrecked vehicles, with its lights flashing. Neither of the other vehicles could be moved. Plaintiff gave first aid to the injured driver and arrested the other driver because he was drunk and had caused the accident and at one point attempted to leave the scene, and also because plaintiff feared that that driver would be struck by another car if he wandered about the roadway. The night was foggy. Plaintiff stopped a taxi, used its radio to call for other police assistance, and caused flares the taxi driver had to be placed at the top of the bridge.
As plaintiff was returning towards the wrecked vehicles from arresting the allegedly drunken driver and ordering him to stand in front of plaintiff’s own car, another driver struck plaintiff’s car and then struck plaintiff, causing injury to plaintiff.
Plaintiff also testified that as a police officer he was required to carry his service revolver 24 hours a day, subject to suspension if found without it. “We are instructed that we are on duty 24 hours a day but have been told on many occasions that only in major cases or where there was a need to assist somebody in trouble or for the protection of life and property should we get too involved in something off duty. An example, speeding or some minor violation, we aren’t expected to take action.” “We are required to take police action whenever in our judgment or discretion we feel there is some sort of serious crime or some person or their property needs assistance. When assistance is needed to protect life or property we are considered on duty whether we are working in our regular assignment or not.” Plaintiff testified he definitely felt it was his duty as a police officer to take the action he did.
We entertain no doubt, under the circumstances, that the accidental injury to plaintiff arose out of and in the course of his employment. At the time of the accident plaintiff was not in the position of, say, an off-duty officer injured while changing his own car’s tire, whose actions and injury would be unrelated to his employment as a policeman. Here we believe plaintiff was injured precisely because he was engaged in discharging the obligations of his employment, and his accidental injury was a compensable one because arising out of and in the course of his employment, R.S. 23:1031. Any other conclusion would in *13 vite “off duty” police officers to ignore rape, robbery, mayhem, murder, and any other imminent damage to a citizen or his property.
We also conclude, from the sole medical witness’s testimony, that plaintiff’s injury permanently totally disabled him, within the meaning of R.S. 23:1221, subd. (2). That witness testified of many initial objective symptoms of injury to plaintiff’s cervical and lumbosacral spine regions. The cervical problems appeared ultimately to have subsided, but the lumbosacral problems never completely cleared. The doctor expressed the opinion “the patient will continue to have aggravations and remissions of the symptoms relative to the lum-bosacral spine region for an unlimited period of time, possibly forever; I could see no dramatic alleviation in the near future.”
The doctor testified that, because of the back condition, plaintiff could not perform the duties of a police officer involving running, jumping, forcefully arresting suspects, or even sitting for any length of time; “there would be times when he couldn’t even walk, let alone drive a car.” The witness, who is also a treating physician for the police department and professed' a working knowledge of police duties, also cited the obligation of a police officer to cover and protect his partner on duty. The witness expressed the view plaintiff also could not fulfill that obligation.
This medical evidence, considered with plaintiff’s testimony concerning his duties as Field Sergeant, was sufficient to support the trial court’s conclusion that plaintiff was permanently and totally disabled to perform the functions of his employment.
Defendants argue that plaintiff has not shown a total disability to perform his duties as Acting Lieutenant. We believe, from plaintiff’s testimony he had to drive a car about six hours a day as Acting Lieutenant, that the quoted medical testimony does show total disability. We further note plaintiff was in fact a Field Sergeant, and only acting as Lieutenant.
In respect to the medical evidence, although defendants offered no medical evidence themselves, they argue that plaintiff’s failure to call as witnesses other doctors who examined plaintiff requires a presumption that the testimony of those doctors would have been unfavorable to plaintiff’s case.
All of the other doctors — orthopedist, urologist and proctologist — were brought in as consultants by plaintiff’s treating physician. That physician’s testimony clearly explains away any possible inference as to the urologist and proctologist: their findings, in their limited sphere, were negative and did not alter or affect the treating physician’s view of the case. See Harney v. Kountz, 218 So.2d 913 (La.App.1969), writ refused, 253 La. 1093, 221 So.2d 521.
The orthopedist was in a somewhat different position. His consultation was more lasting, and included hospitalizing plaintiff for traction and further evaluation. The treating physician, who is an expert in internal medicine, had called for orthopedic consultation because “an orthopedic surgeon would be the man most qualified if necessary to go into the back and do any repair work that might be necessary.” And, the treating physician testified, the orthopedist did report findings compatible with the treating physician’s findings. Perhaps the presumption does result from failure to call the orthopedist under the circumstances. Nevertheless, that presumption cannot overcome the positive testimony in the record, obviously accepted by the trial judge, which supports plaintiff’s claim; Bagley v. Commercial Union Ins. Co. of N. Y., 216 So.2d 102 (La.App.1968); Evers v. State Farm Mut. Auto. Ins. Co., 187 So.2d 217 (La.App.1966); see also Delafosse v. Industrial *14 Painters, Inc., 199 So.2d 559 (La.App.1967).
The final point defendants argue is that statutory penalties should not have been imposed under R.S. 23:1201.2, both because no written notice was given and because the withholding of payments was not arbitrary, capricious, or without probable cause.
An exhibit shown by plaintfif’s counsel to plaintiff and intended to prove the “formal demand” was left unintro-duced because, on the court’s inquiry, defense counsel stated (erroneously) formal demand had been admitted in the answer. Yet even in brief defendants do not argue that no written notice was in fact given, but only that the record does not contain evidence of written notice. Since defendants’ concession that formal demand had been made caused the non-inclusion of an exhibit intended to show written notice, we feel constrained to construe defendants’ concession as an admission of written notice.
We also conclude defendants had no probable cause to refuse payments. While back injuries are sometimes speculative and even suspicious, defendants could not reject a claim on medical grounds except on reasonable medical advice. Defendants offered no medical testimony to justify their refusal of compensation, and we can therefore find no medical justification. We likewise consider no probable cause defendants’ theory plaintiff was “off duty” and the accident not compensable. Defendants offered no testimony to contradict plaintiff’s version of police work as a 24-hour job as discussed above.
We accordingly affirm the judgment appealed from in all respects, except that we correct what appears to be a mathematical error in the amount awarded for past medical expenses by amending that figure to $2,144.92. As thus amended the judgment is affirmed.
Amended and affirmed.