316 So.2d 769 (1975)
Ollie J. GAUTHIER
v.
EMPLOYERS NATIONAL INSURANCE COMPANY et al.
No. 10317.
Court of Appeal of Louisiana, First Circuit.
June 30, 1975.
Rehearing Denied August 26, 1975.
Writ Refused October 24, 1975.
*770 Barnes & Barnes, Walton J. Barnes, Baton Rouge, for plaintiff-appellant.
Durrett, Hardin, Hunter, Dameron & Fritchie, Emile C. Rolfs, III, Baton Rouge, for defendants-appellees.
Before SARTAIN, ELLIS and BARNETTE, JJ.
*771 BARNETTE, Judge.
On December 11, 1973, in the course of his employment by the Kroger Company as a butcher, plaintiff-appellant, Ollie J. Gauthier, had an unwitnessed accident causing injury to his back. This suit was brought to enforce his workmen's compensation claim against Kroger and its insurer, Employers National Insurance Company.
The trial court found that Gauthier was injured as alleged from which he was totally and permanently disabled, within the meaning of the Act. Judgment was rendered accordingly for maximum compensation. The plaintiff's demand for the statutory penalty and attorney's fee was denied. From that portion of the judgment denying penalty and attorney's fee, Gauthier appealed devolutively. The defendants answered the appeal seeking reversal of the judgment awarding compensation and reversal of the judgment wherein the reconventional demand was rejected.
On the day of the accident, the plaintiff was at work in Kroger's store number 139 performing his regular duties of preparing meat for retail sale. One of plaintiff's duties was carrying beef sections from the meat locker just prior to their being cut up and wrapped for display and sale. The testimony indicates the weight of these sections would run up to about 80 pounds. The handling of them was no easy task and required physical exertion.
No one witnessed the alleged accident, but testimony from two fellow employees in the meat department indicates that plaintiff had gone into the meat locker (presumably to bring out another section) and upon coming out empty handed one of his fellow employees said "[Gauthier] was walking slow and was kind of, I guess you would say glassy eyed look in his eyes, kind of weak eyed." He stated that he had been hurt and was told by Mr. Cawvey, the meat market manager, to go up front and fill out an accident report. After completing the report, Mr. Gauthier phoned his wife who arrived some 30 minutes later to take him home. At 8:00 A.M. the same morning,[1] Mr. Gauthier, still having pain in his lower back, saw Dr. Richard Hill in his office for relief and treatment. Dr. Hill later, on January 11, 1974, referred plaintiff to a neurosurgeon, Dr. O. Dean Moore, for further evaluation. On January 14, 1974, a myelogram was done and the next day Dr. Moore performed surgery on the plaintiff.
Mrs. Gauthier called Kroger locally and obtained the "Kroger" number in Houston. She said she then called Employers office a number of times in an attempt to obtain claim forms. No one ever told her why the claim was resisted. Finally, the plaintiff obtained counsel to contact Employers, and suit was filed on April 2, 1974, alleging that "on or about the 11th of December, 1973, while acting within the course and scope of his employment with the defendant employer, petitioner was unloading some meat products and while lifting a section of beef that weighed approximately ninety (90) pounds he felt a `popping' sensation in his back, associated with severe pain, resulting in his being unable to straighten up." In addition to compensation and medical expenses, plaintiff seeks recovery of statutory penalties and attorney's fees for the alleged arbitrary and capricious refusal by defendants to honor his claim and make timely payment of compensation.
The defendants contend in effect that they were justified in refusing payment to the plaintiff based on the fact that plaintiff had had a prior back injury on January 19, 1970 for which he claimed workmen's compensation benefits from the same employer and insurer. This prior suit for total permanent disability was settled June *772 2, 1972 with court approval by payment to Gauthier of $10,000. Two months later the plaintiff, representing himself to be sufficiently recovered from that injury, returned to work for Kroger in essentially the same capacity as prior to the 1970 accident. He continued in that work until the December 11, 1973 accident which is in question here. The defendants contend that based on the medical and factual information available to them on April 2, 1974, when suit was instituted,[2] they were reasonable in their belief that the injury of December 11, 1973 was simply a further manifestation of the accident of 1970 for which they had made final settlement, and had been released from further liability. Defendants construe this release as an indemnity agreement by which Gauthier bound himself to hold them harmless on account of any further claims arising out of the 1970 accident. This is the basis of their reconventional demand for $3,500 for expenses of defending this litigation, which they assert was brought in contravention of the release agreement of June 2, 1972.
Expert testimony establishes that the 1970 surgery for a herniated disc at the L-5, S-1 level on the right side; the 1974 surgery at L-4, 5 disc on the left side. However, there is disagreement as to whether or not the two injuries are connected. Dr. Hill, who attended Mr. Gauthier on both injuries, was of the opinion that the new injury was related to the prior injury. Dr. Moore, the neurosurgeon who performed the surgery in the current injury, was of the opinion that there was no connection between the two injuries.
There is some contention that Dr. Moore based his conclusion, at least in part, on plaintiff's past medical history (which was related to him by plaintiff) and some testimony from a psychiatrist, who had examined plaintiff on three occasions subsequent to the earlier injury, that plaintiff was faking some of his symptoms. However, the trial court, after considering all the evidence, found that the plaintiff was permanently and totally disabled from the December 11, 1973 accident, but found that the defendants were not arbitrary or capricious in refusing to honor his claim in view of the history of back injury and prior settlement with the plaintiff. In effect the court found that defendants were not unreasonable in their belief that the second alleged injury was related to and a manifestation of the first injury.
Judgment was rendered in favor of the plaintiff for compensation at the rate of $65.00 per week for a period not exceeding 500 weeks, and medical expenses, and rejecting the defendants' reconventional demand for $3,500 for investigating expense, attorney fees, and certain court costs. The plaintiff's claim for penalties was rejected. As stated above the plaintiff took a limited appeal from this denial of penalty and attorney's fees. Defendants answered the appeal seeking to contest the District Court's award for compensation benefits, medical expenses and costs, as well as the rejection of their reconventional demand, thus putting at issue on this appeal all the issues tried below.
We find that the trial court was correct and supported by reasonably drawn conclusions from the evidence in finding that there was an accident arising out of and in the course of the plaintiff's employment. True, there were no eyewitnesses at the exact instant plaintiff lifted the side of beef injuring his back. Of the several witnesses who saw plaintiff immediately thereafter as he walked out of the area where the meat was kept and observed his subsequent behavior, none voiced the *773 slightest doubt that the plaintiff had actually hurt himself. Later medical testimony also supports the conclusion that there was an accident.
We also find that the trial court is supported by sufficient evidence in its finding that the December 11, 1973 injury was unrelated to the prior settled injury.
In cases of this type where an injury to the back is sustained, testimony of expert witnesses is especially heavily relied on by the court. The only "hard" physical evidence in this case is the fact the damaged disc in the current injury is slightly above the herniated disc of the prior injury. The 1970 surgery was for a herniated disc at the L-5, S-1 level (the disc between the fifth lumbar vertebra and the first sacral vertebra) on the right side of the vertebral column. In the 1974 surgical operation, the L-4, 5 disc was found to be herniated and it was excised on the left. Also examined during the surgery, the L-5, S-1 disc on the left side was found to be normal.
As previously stated, Dr. Richard Hill, plaintiff's family physician who had been the first to attend plaintiff on both accident occasions, was of the opinion that the two injuries were related, not in the respect that the second injury resulted from or was caused by the 1970 injury, but in the respect that "There is a relation, that after surgery, a person is more likely to have back trouble again * * *."
In addition to Dr. Hill's testimony, Dr. Dean Moore, whose medical expertise is in the field of neurology, testified that the accident and injury in December of 1973 was not related to any accident or injury occurring in January of 1970. The doctor seemingly based his opinion that there is no connection between the two injuries on the following facts and general principles taken from his testimony: 1) the plaintiff's past medical history, including symptoms of residual pain and termination thereof from the 1970 injury, as related to him by the plaintiff at the time of examination; 2) that injuries to the spine that result in a rupture at a vertebral interspace do not necessarily weaken the spine, even if a disc is removed; 3) that during the surgery he performed in January of 1974, the disc interspace L-4, 5 on the left side was found degenerated and herniated, and the L-5, S-1 interspace on the left appeared normal. [The right side was not surgically examined]; 4) that except in very rare instances, a normal disc will not herniate; it must be degenerated first; 5) that if an individual has one degenerated disc one cannot presume a likelihood that he has more than one; more often than not, people have one bad disc rather than multiple bad discs.
There have been some inferences by the defendants that the plaintiff faked his symptoms for two and one half years (or a portion thereof) until he could recover the compromise settlement in June of 1972, or that the plaintiff perhaps feigned recovery of his earlier injury in order to return to work in August of 1972.
Under their first posture the defendants point up the unlikelihood (and this is corroborated by Dr. Moore) of a person, having been symptomatic for some 2½ years, suddenly over the relatively short span of two months becoming asymptomatic and returning to work, especially in the capacity of a butcher. They also offer the testimony of Dr. Jacob T. Cross, a psychiatrist who examined plaintiff September 21 and October 5 and 12 of 1971, that he felt that plaintiff was "faking a great majority of symptomatology." This, they point out, indicates that plaintiff was not entirely truthful, and perhaps even self-serving, when he gave his prior medical history to Dr. Moore, who then relied to some extent on the medical history in his determination that the injuries were not connected. It is significant that Dr. Moore had the following to say: "Essentially, Your Honor, the way I heard the story was, he had the injury [1970 injury], had the discs, had symptoms, had surgery and a prolonged recovery *774 period, and finally recovered from this and went back to work in August of `72, and since that time he had remained well until December this past year [1973], at which time he was injured again and developed symptoms again, and on that basis, I felt that there was no connection between the two." It is of no moment in this lawsuit whether or not the plaintiff defrauded the defendants in the earlier settlement; nor is it material whether or not the plaintiff had actually been free of symptoms prior to the time he claimed he was. If indeed he was faking symptoms in order to enhance his recovery under the compromise, it would mean that there was a longer period of leapsed time between recovery of the old injury and the occurrence of the new one, thus lending support to the theory that there was no connection between the two injuries.
On the other hand, what are the possibilities that the plaintiff feigned recovery in order to return to work? Apparently the trial court, after hearing the evidence and testimony, did not think this to be the case. We agree with this conclusion.
Plaintiff, after returning to work on August 10, 1972, worked for approximately 17 months in his capacity as a butcher performing essentially the same duties throughout the full 17 month period as he was performing on the day of the accident. His ability to perform the rigorous lifting required by his calling would seem to indicate that he was free of symptoms, at least during his period of employment. The defendants have not pointed out nor have we been able to find any indication in the record that the plaintiff was not working at full capacity. In fact, every one of his co-workers who touched on the subject said prior to the accident plaintiff was performing all his regular duties and was not possessed of any inability to lift.
We, therefore, find that the trial court is amply supported by evidence and not manifestly wrong in its finding that the two injuries were not connected in any way, and that the plaintiff is totally and permanently disabled as a result of the injury sustained on December 11, 1973.
We turn now to the question of penalties and attorney fees. La.R.S. 22:658 provides the following:
"All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney's fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney's fees for the prosecution and collection of such amount. Provided, that all losses on policies covering automobiles, trucks, motor propelled vehicles and other property against fire and theft, the amount of the penalty in each of the above cases shall be 25% and all reasonable attorney's fees. Amended and reenacted Acts 1958, No. 125."
In addition, the Workman's Compensation statute provides the following in La.R.S. 23:1201.2:
"A. Any employer whose liability for claims arising under the provisions of this Chapter is not covered by insurance, shall pay the amount of any claim due *775 under the provisions of this Chapter, within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the employer to a penalty, in addition to the amount of claim due, of 12% of the total amount of such claim, payable to the claimant, together with all reasonable attorney's fees for the prosecution and collection of such claim, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due, and all reasonable attorney's fees for the prosecution and collection of such amount. Any such employer who at any time discontinues payment of claims due and arising under the provisions of this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the penalties set forth above, payable to the claimant, together with all reasonable attorney's fees for the prosecution and collection of such claims. The provisions of R.S. 23:1141 limiting the amount of attorney's fees shall not apply in cases wherein the employer is found liable for penalties and attorney's fees under the provisions of this Section.
"B. The notice required by the provisions of this Section may be given or made by any person claiming to be entitled to compensation, or by any one on his behalf, and shall contain the information and signature required by R.S. 23:1293 and shall be given as required by R.S. 23:1294. Added Acts 1958, No. 432, § 1."
The penalty provisions of these two statutes are the same. Both have been applied by the courts in the past to impose penalties and reasonable attorney fees where appropriate in workmen's compensation cases. The determination of which one to apply is governed by whether or not the employer is covered by insurance.
A close comparison of the two statutes points up the distinction to be made. LSA-R.S. 22:658 applies in general to all claims against insurers except in life insurance and health and accident claims. LSA-R.S. 22:656 and 22:657. It clearly applies in workmen's compensation cases. It requires "satisfactory proofs of loss from the insured, [Kroger] employee [Gauthier] or any party in interest [wife or attorney].
LSA-R.S. 23:1201.2 applies only to workmen's compensation cases and then only when the "employer whose liability * * * is not covered by insurance, * * *." It merely requires "written notice" of the claim. It does not indicate by whom such notice must be given, so it is not restricted in this respect.
Therefore, insofar as penalties and attorney's fees are concerned, the applicable statute is LSA-R.S. 22:658 and if the liability for such penalties is applied it would be that of the insurer and not the employer.
The statutes are similar in imposing penalties for failure to make payment "* * * when such failure is found to be arbitrary, capricious, or without probable cause * * *." (Emphasis added)
Before it can be determined whether or not the insurer's action in refusing to pay the claim was arbitrary, capricious, or without probable cause, it must be determined what information it used, or had available to it, on which to base its course of action.
There is no doubt that Kroger had notice of the accident and injury through Kroger's own accident report that the plaintiff filled out immediately after his injury. This notice was communicated to the insurer and was followed by demands made directly upon the insurer by "parties in interest" in Gauthier's behalf. We find that the requirement of the statute (LSA-R.S. 22:658) of "satisfactory proof of loss" was met and the only question is whether *776 or not the insurer was arbitrary or capricious or without probable cause in not making payment of compensation within sixty days.
Prior to April 24, the date Employers took Dr. Moore's deposition, the only information that Employers had was a bill from Our Lady of the Lake Hospital dated January 26, and a bill from Dr. Walter Hennigan, the anesthesiologist, dated January 15. These bills contain no reference to the type of treatment or condition of Mr. Gauthier; the most they show is that Mr. Gauthier was in the hospital and that he evidently had surgery.
The plaintiff argues that Mr. Kammer, Employer's adjuster handling the claim, knew Mr. Gauthier had had surgery and that Dr. Moore was the operating surgeon. That with this information at hand and the fact that there was notice to Kroger and Employers and there were both oral and written demands for payment, the defendant insurer cannot be heard to say that it did not have probable cause to believe a compensable injury had occurred. Plaintiff's counsel further argues, that even if the insurance company for some reason could not obtain a report from Dr. Moore there are provisions in the workman's compensation statutes to obtain needed information and even to compel examination of the claimant by the insurer's own doctors. That the insurance company could not justify nonpayment of compensation after notice solely on the basis of its own records of the claimant prior back injury and claim settlement, without current medical consultation and advice.
Counsel for plaintiff, appellant has cited a number of cases in which the penalty provisions of the statute have been imposed. The jurisprudence is well settled that the penalty provisions of the Act (both LSA-R.S. 22:658 and LSA-R.S. 23:1201.2) will be imposed when the refusal of the insurer (or employer) to make payment after sixty days from receipt of proper notice when the refusal is arbitrary, capricious or without probable cause.
Counsel for appellant in his "syllabus of the law" in the preface to his brief says: "Where liability has been denied and the employee judicially sought and obtained recovery, it is mandatory that the court allow penalties and attorney fees." Citing Steadman v. Pearl Assurance Company, 167 So.2d 527 (La.App. 4th Cir. 1964), writ refused, 246 La. 911, 168 So.2d 822 (1964). This is not a correct statement of the law nor a proper interpretation of the opinion of the court in the Steadman case. In that case payment was tendered on the sixty-first day after receipt of proof and demand, which the court held was too late. The penalty provision of the statute was not imposed merely because the plaintiff prevailed judicially but because the defendant offered "no explanation" of its failure or delay in tendering payment. It is not enough therefore that the claimant has prevailed judicially on the principal demand, but he must also "prove" that the failure to pay was arbitrary, capricious or without probable cause. Gloston v. Coal Operators Casualty Co., 85 So.2d 100 (La.App. 1st Cir. 1955). In requiring that proof by the claimant this court further said in Lyons v. Pirello, 194 So.2d 147 (1967) at p. 153:
"The statute in question is penal in nature and therefore subject to the rule of strict construction * * *. Where there is ground for bona fide dispute * * * the penalty provisions * * * are not applicable."
There is no absolute rule which can be stated to apply in every case as a test of "probable cause." There must be a latitude of discretion vested in the courts and especially in the trial judge in determining this fact question. In the exercise of that discretion due regard must be given to all the circumstances surrounding the claim or alleged compensable injury and the credibility of the witnesses. The discretion of *777 the trial judge on the point will not be overturned except where clearly abused or manifestly erroneous from a factual standpoint.
The circumstances in this case are unusual and of such nature that a serious question could reasonably be entertained by the insurer. This claimant gave notice of an unwitnessed accident with back injury nearly four years prior thereto while employed by this employer, insured by this insurer. His suit arising out of that accidental injury was terminated by lump-sum settlement of $10,000, less than 18 months prior to the accidental injury upon which this claim was made. It was not an abuse of discretion by the trial judge in finding the insurer within reason in withholding payments until it could be determined if the alleged back injury was actually a new and different injury or a remanifestation of the old injury for which substantial compensation had been paid. This determination was not made until after this suit was filed.
The appellant contends that after receipt of the notice of injury, the insurer was under duty to avail itself of every source of information and specifically to make inquiry of the claimant's treating or examining physicians to determine the validity of the claim. We do not think its duty was lessened in this respect by the circumstances in this case, or that the circumstances cast a greater burden upon the claimant in making "satisfactory proof" of a distinctly new and unrelated back injury. The insurer's failure to obtain surgical reports or other evidence is the risk it assumes of the imposition of a penalty when such report might not support its position. But this is no more than one factor to be considered in determining whether the insurer acted with probable cause. There may be many other relevant factors to be considered depending on the totality of the circumstances in a particular case.
Had this notice of accident and injury related to some other member or part of the anatomy or reported a functional disability not involving the employee's back we would have to agree that defendants' failure to respond to the notice within the statutory time would have been arbitrary or capricious. But here we have the circumstance of the claimant having executed a release of these defendants from any further responsibility for any further claim which might arise as a result of the back injury previously sustained. It was not unreasonable for the insurer to follow the course of action it did. It was not unreasonable to assume that there was possibly a relationship between the new back complaint and the old one, thus posing a legitimate material issue. As indicated by the letters written by plaintiff's attorney to Dr. Hill and Dr. Moore seeking medical and surgical reports, before and after the expiration of the sixty day period, both he and the insurance claim adjuster were having difficulty in getting the reports. We cannot fault the claim adjuster for not getting a report which plaintiff's attorney could not get. The surgical report was certainly the best evidence if not the only conclusive information which could be had to prove a new and wholly unrelated back injury. The trial judge did not abuse his discretion in finding under these circumstances that the defendants were not arbitrary, capricious or without probable cause in withholding from this claimant payment of additional compensation for his "back injury."
The factual situation in this case distinguishes it from Montreuil v. Winn-Dixie Stores, Inc., 279 So.2d 701 (La.App. 4th Cir. 1973), writ refused, 282 So.2d 143 (La.1973); Krasnoff v. New Orleans Police Department, 241 So.2d 11 (La.App. 4th Cir. 1970). In neither of those cases was there a prior suit based on a back injury and lump-sum settlement with release of the same employer and insurer. Furthermore, in Montreuil hospital records which would have confirmed the claim were available to the insurer, but the insurer apparently made no effort to obtain them. *778 Every case must be decided on its own set of facts and circumstances.
The facts and circumstances peculiar to each case must be controlling of the question of "probable cause" for withholding payment. We merely hold that there is no manifest error or abuse of discretion by the trial judge in deciding this question in this case.
We affirm the trial judge's finding that the evidence amply supports the conclusion that the plaintiff did sustain a new accidental injury on December 11, 1973 and that it was wholly unrelated to his prior accident and back injury. This conclusion disposes of the issue raised by the defendants' reconventional demand.
For these reasons the judgment appealed is affirmed in all respects. The costs of this appeal are assessed to the appellant.
Affirmed.
SARTAIN, J., concurs in reasons assigned.
SARTAIN, Judge (concurring).
While I concur with the majority opinion in affirming the decision of the trial court which denied plaintiff's claim for statutory penalties and attorneys' fees, I wish to emphasize my principal reason for doing so.
The record is very convincing that repeated efforts were made by counsel for the plaintiff to obtain a medical report from Dr. Moore concerning the latter's treatment of the plaintiff. These efforts commenced on February 11, 1974 and repeated requests of the doctor to render such information fell on deaf ears. It was not until after suit was filed and then during the latter part of April, 1974, when Dr. Moore was deposed, that any information was obtained from him. Dr. Moore was plaintiff's physician and plaintiff must be held equally responsible for his physician's refusal to submit medical information which the insurer requested.
NOTES
[1] The accident occurred around 3:00 A.M. the morning of December 11. At this time Kroger was beset with labor problems and was being picketed during the day. Consequently some of the employees were working irregular hours during this period.
[2] Defendant's counsel in his brief filed in this court said: "By stipulation it was agreed that prior to April 24, 1974, the only medical information available to the defendants-appellees was a bill from Our Lady of the Lake Hospital, dated January 26, 1974 and a bill from Dr. Walter Hennigan, the anesthesiologist." We find no such stipulation in the record.