CHIASSON, Judge.
On April 25, 1973, in the course of his employment by Dinon Associated Terrazzo and Tile Company (Dinon), while in the process of using a heavy terrazzo polishing machine, plaintiff-appellee, Loreto Montag-nino, slipped on a wet floor and fell causing injury to his back. This suit was brought to enforce his workmen’s compensation claim against Dinon’s insurer, Allstate Insurance Company, defendant-appellant.
Defendant appeals from the judgment of the Trial Court in favor of plaintiff for maximum compensation left owing, i.e. 479 weeks at $49.00 per week, with legal interest and cost. Plaintiff neither answered the appeal nor filed an appeal on his behalf. We affirm.
The Trial Judge did not favor us with any written reasons or transcribed oral reasons for judgment.
Appellant contends that:
1. The appellee had not regained his ability and capacity to perform hard manual labor prior to the occurrence of his second accident.
2. The judgment signed on July 31, 1973, dispensed with any and all liability, up to and including that time, due by employer and insurer for any injuries he may have received while in the course and scope of his employment by his employer, Dinon.
Appellee, now 36 years old, came to this country from Italy about 15 years ago and immediately went to work for Dinon. His formal education consists of 5 years of elementary school in Italy and he cannot read or write English.
On October 21, 1971, appellee was injured in the course of his employment as a terrazzo grinder for Dinon. As a terrazzo grinder the appellee operated a 350 to 400 pound sanding machine. The appellee’s job assignment included loading and unloading this machine, as well as moving this machine about the building in which he worked. The appellee injured his back while lifting this machine.
Workmen’s compensation coverage for Dinon at that time was provided by Employers Mutual Liability Insurance Company of Wisconsin (Mutual). Following his injury the appellee applied for and received workmen’s compensation benefits from Mutual.
After his injury the appellee was treated by Dr. Winters. When the appellee did not repond to treatment, Dr. Winters referred the appellee to another specialist, Dr. Llewelyn. On July 12, 1972, after additional treatment had failed to help the appellee, Dr. Llewelyn performed an operation for a suspected ruptured disc. The appellee was found to have a lateral rupture of the L5-S1 disc on the right and Dr. Llewelyn removed the torn portion of the cartilage.
*237 Following surgery the appellee began to recover, On February 21, 1973, Dr. Llew-elyn discharged the appellee, and advised him to return to his regular job assignment. The appellee was instructed to return to Dr. Llewelyn if his regular job assignment created soreness sufficient to cause him to miss work. After being forced to miss several days work due to soreness, the appellee returned to Dr. Llewelyn’s office on March 16, 1973. Dr. Llewelyn’s deposition was taken in lieu of his testimony, and on page 15 of the deposition, the Doctor states:
“A The patient did return in March stating that he had returned to work and had worked for three days with injuries and soreness which he attributed to lifting and rigorous muscular activities required of his work. That he was off for two or three days and would feel better and again on attempting to work, after only two days he was sore to the extent that he felt he couldn’t continue. The patient, at that point in time, in March of 1973 was given an understanding that his present post-injury and post-operative back status was such that I felt that his job assignment was too rigorous or too demanding from the ' muscular standpoint for him and suggested that he continue rehabilitative efforts. . . .”
Appellee’s understanding was that he should continue to work as the activity would be good for him.
In a letter to Jack Winters M.D., dated March 27, 1973, Dr. Llewelyn stated that, in his opinion, the appellee had an 8% anatomical disability and was therefore 100% disabled as to his ability to perform his regular job assignment.
On April 25, 1973, the appellee slipped while working and injured his back for a second time. After appellee’s second injury, he could no longer work as a terrazzo grinder for a while.
Dr. Llewelyn initially felt that the appel-lee’s second injury was an aggravation of the original injury. After the initial treatment the Doctor again advised appellee to return to work! However, when the appel-lee did not respond to treatment and was unable to continue work, Dr. Llewelyn, in July, 1973, began to suspect that the appel-lee’s slip and fall might be a new injury.
Between the appellee’s first and second injuries, Dinon changed workmen’s compensation insurers. Following his second injury the appellee applied for and received workmen’s compensation benefits from Dinon’s new insurer, Allstate Insurance Company, the defendant-appellant.
On July 31, 1973, appellee and Mutual entered into a Court approved workmen’s compensation settlement in the amount of $13,000.00, plus weekly benefits previously received in the amount of $4,018.00 and medical expenses in the amount of $2,975.-31.
Due to the appellee’s failure to respond to medication and therapy after the second injury, Dr. Llewelyn performed a second operation on September 20, 1973. The ap-pellee was found to have a primary disc rupture of the L5-S1 disc on the left. Following surgery, Dr. Llewelyn’s opinion that the appellee’s second injury was a new injury unrelated to the original injury, was confirmed. Further, the Doctor was of the opinion that, as a result of the second injury, the appellee was totally and permanently disabled.
In November, 1973, the appellant discontinued workmen’s compensation payments to the appellee resulting in this suit being filed.
The question raised in this suit is the effect of the appellee’s prior injury and settlement on his right to recover in the present case. Where a party has sustained disabling injuries in a prior accident, it is necessary that the circumstances and effects of the prior accident be closely *238 and carefully scrutinized with reference to any effect they may have on the case at hand. Windham v. W. Horance Williams Co., 18 So.2d 854 (La.App. 2nd Cir. 1944).
An examination of prior jurisprudence indicates that recovery of workmen’s compensation benefits for total and permanent disability, in cases where the injured party has been granted disability benefits for prior injuries, is contingent on three factors. First, the second injury must be the result of a second separate accident; second, the second injury must be unrelated to the first injury; and third, the injured party must not in fact be totally and permanently disabled, as to the type of work he was performing prior to the second injury. Gauthier v. Employers National Insurance Co., La.App., 316 So.2d 769 (1st Cir. 1975); Scott v. Hartford Accident & Indemnity Company, La.App., 302 So.2d 641 (3rd Cir. 1974); Church v. Tilton, La.App., 269 So.2d 319 (2nd Cir. 1972); Whatley v. Lummus Company, La.App., 243 So.2d 922 (3rd Cir. 1970); Tate v. Lumbermen’s Mut. Cas. Co., 172 So.2d 87 (La.App., 4th Cir. 1965); Castee v. Great American Indemnity Company, 81 So.2d 101 (La.App., 2nd Cir. 1955).
With regard to the first two factors, the appellee is entitled to recovery. The testimony of Eugene Woods and the appellee establishes that the appellee’s second injury occurred when the appellee slipped on the wet floor while operating the terrazzo finishing machine. This was a second separate accident. We agree with Dr. Llewelyn’s opinion, which has not been contradicted by any testimony, that the appellee’s second injury was not related to the prior injury.
It is the third factor which presents a serious question in this case. In prior cases in which the injured party has been allowed to recover benefits for total and permanent disability after receiving disability benefits for prior accidents, the determination that the injured party was not permanently and totally disabled at the time of the second injury was based on the injured parties having returned to work and having performed their regular job assignments. Gauthier v. Employers National Insurance Co., supra; Castee v. Great American Indemnity Company, supra; Johnson v. W. L. Richeson & Sons, 53 So.2d 192 (La.App., Orleans, 1951). The periods worked in these cases, following the first injury but prior to the second injury, varied from one year to three years. The appellee in the present case worked only two months before his second injury. Additionally, there was evidence the appel-lee experienced some initial difficulty in returning to his regular job assignment. We conclude from the record that appellee had regained his 'ability and capacity to perform hard manual labor prior to the occurrence of his second accident. The ap-pellee had performed his regular job assignment satisfactorily for five weeks, with no complaints to his Doctor, before he sustained his second injury.
This suit represents a second demand by the appellee for workmen’s compensation benefits for total permanent disability. However, the compromise settlement between Mutual and the appellee did not include a determination of the actual extent of the appellee’s disability resulting from the first accident. The appellee’s allegation, in the judicially approved compromise between the appellee and Mutual, that he was totally and permanently disabled is not proof of the extent of the ap-pellee’s disability. While the opinion expressed by Dr. Llewelyn in his letter of March 27, 1973, is strong evidence as to the appellee’s condition at that time, it is offset by the fact that appellee, on Dr. Llewelyn’s advice, had returned to work and had been performing his duties satisfactorily before the occurrence of the second accident. Further, in a report dated May 24, 1973, before the Compensation Settlement, Dr. Llewelyn stated:
“. . . but I am confident that he has recovered from work aggravation problem, and he was encouraged to believe *239 that he should actually benefit from increasing his activities now, this including regular work assignment, but one that was within his tolerance of bending, lifting and squatting activities. I encouraged him to return to work seeking job assignment within his capabilities.
There is nothing in the joint petition, judgment or release signed on July 31, 1973, that indicates an intention of either party to settle the injury of April 25, 1973. On the contrary, the judgment provides :
“.payment shall be in full and final compromise settlement of all claims, including any and all claims for medical expenses, rights of action or causes of action, which may have arisen or which might hereafter arise in favor of Loreto Montagnino and against Dinon Terrazzo & Tile Company, Inc., and Employers Mutual Liability Insurance Company of Wisconsin as a result of that certain accident which is alleged to have occurred on or about October 25, 1971, Orleans Parish, Louisiana, and all injuries sustained therein by Loreto Montagnino or resulting therefrom.” (Underscoring supplied)
We hold that the Compensation Judgment rendered upon the joint petition of appellee, Dinon and Mutual, did not release or relieve Dinon and Allstate for injuries received by appellee in the April 25, 1973 accident.
Because the appellee has failed to appeal or to answer the appellant’s appeal, we cannot consider the appellee’s contention that the Trial Judge erred in failing to award penalties and attorney’s fees.
For the foregoing reasons the judgment appealed from is affirmed at appellant’s cost.
AFFIRMED.