FORET, Judge.
This matter arises out of the theft of a pair of elephant tusks from the home of Wanda Lyles McGowen, plaintiff herein. The tusks stood Tk feet tall and had a combined total weight of 196 pounds (one weighing 101 pounds and the other weighing 95 pounds). There is little doubt from the record that these tusks were appropriately designated as being in the “trophy” class.
Mrs. McGowen was insured against risk of loss via theft by the St. Paul Guardian Insurance Company. Additionally, she had purchased, under the same policy, the “Home Contents Replacement Costs Endorsement” which provided an extra degree of protection against such losses in that it contained a replacement cost provision which would allow her to recover the replacement cost of the tusks as of October 4, 1980, the time of the loss.
The principal dispute is the value of the tusks on the day of the loss. After rejecting defendant’s offer of $7,900 (estimated value of $8,000 less the $100 deductible), plaintiff instituted this proceeding seeking $45,000 as the value of the tusks, plus 12% of that amount as a penalty, and reasonable attorney’s fees. At the request of the defendant, the matter was tried before a jury, and after a two-day trial, judgment was rendered in favor of the plaintiff in the amount of $16,000, rejecting, however, her demand for penalties and attorney’s fees.
From this judgment, plaintiff has appealed devolutively.
Our inquiry is limited to a determination of whether or not the trier of fact abused its much discretion in determining the value of the tusks to be $16,000.
This determination is a purely factual question. Both plaintiff and defendant, in an effort to establish the value, relied upon the testimony of expert witnesses. Plaintiff produced the testimony of Mr. Harry Lee Tennison, a renowned big game hunter from Fort Worth, Texas, with extensive credentials, both in the area of hunting big game and more recently in the preservation of big game, especially elephants.
Tennison testified that he had hunted elephant for some thirty years and has had considerable dealings with ivory during that time. He has acted as an appraiser for ivory for the Nation of Zambia, has sold ivory for eleven years, and is still operating a retail store dealing principally in ivory, has bought ivory from and has sold ivory to people all over the world, and is familiar with the going price of ivory. Tennison admitted that he had in fact never bought nor sold “trophy” ivory and that his dealings were primarily with “broken” ivory, that is, tusks of ivory which are no longer intact, that are cut into pieces and used for carving and ornamental purposes.
Inasmuch as the tusks were of “trophy” size and weight and because they came from an area producing the highest quality ivory, Tennison valued the tusks at a minimum of $45,000.
Defendant relied principally upon the testimony of Mr. John Polis, a resident of New York, who is engaged in the buying and selling of ivory and has been so engaged on a regular basis since the early 1950’s.
*639 Polis, although admittedly a wholesale dealer in ivory, has handled tusks of this size and larger in the past. Mr. Polis deals with full, complete tusks, as opposed to Mr. Tennison, who only dealt with “broken” ivory. Polis testified that the tusks in question were not so rare that they could not be replaced and placed a value on them at approximately $31 per pound at the time of their disappearance in 1980. He derived this figure from valuations published by the Department of Commerce. Polis stated that ivory purchased from him at a wholesale price is generally sold at retail for double the wholesale price. He placed a wholesale value on the tusks at $6,000, which would have placed the retail value of the tusks at $12,000 “unless” as he stated, “he [the retailer] can find some reason to go even higher”.
Our review of the record shows no error on the part of the jury in its valuation of the tusks at $16,000.
PENALTIES AND ATTORNEY’S FEES
The jury’s determination that defendant was not arbitrary and capricious cannot be disturbed. As with all penal statutes, LSA-R.S. 22:658 must be strictly construed and the burden of proof is on the claimant to prove that there was a lack of probable cause, arbitrariness, or capriciousness. Gauthier v. Employers National Insurance Company, 316 So.2d 769 (La.App. 1 Cir.1975), writ refused, 320 So.2d 911 (La.1975); Batiste v. Pointe Coupee Constructors, Inc., 401 So.2d 1263 (La.App. 1 Cir.1981).
In support of its position, defendant, St. Paul Fire & Marine Insurance Company, presented the testimony of Henry Las-trapes, one of its claims managers. His testimony was to the effect that the first time he was made aware of the loss was via a “Property Loss Notice”, which is a separate and distinct document from a claim form, which indicated that the “probable” amount of the entire loss was $3,000 (D-5). This notice was received in the Baton Rouge office on October 13,1980. He testified that he had inquired further into the matter on at least two instances and was of the understanding that proof of loss for some $45,000 would subsequently be filed. He further testified that up until July 24, 1981, his company had not received any proof of loss relating to the tusks in question. On that date, the claims office received the proof of loss accompanied by a letter from plaintiff’s attorney (D-6). The $45,000 claim was above his office authority of $10,000 and he was required to turn it over to the New Orleans Service Center in Metairie, Louisiana. The $45,000 claim was rejected by the New Orleans office after an independent appraisal by a New York appraisal firm, and Mr. Lastrapes wrote to plaintiff’s attorney on September 16, 1981, advising him that the claim had been rejected and tendering to him St. Paul’s draft in the amount of $7,900, the amount that they felt was owed on the loss (D-7).
It is well settled in the Louisiana jurisprudence that whenever there is a dispute as to the amount of the loss, and the dispute is a reasonable one, the insurer can avoid the imposition of penalties and attorney’s fees by unconditionally tendering the undisputed portion of the claim to the claimant. Defendant did so in this instance, and the jury’s finding that the insurer was not arbitrary and capricious is not clearly wrong. LeBlanc v. Underwriters at Lloyd’s London, 402 So.2d 292 (La.App. 3 Cir.1981).
The judgment of the trial court is affirmed. All costs of this, appeal are to be borne by the plaintiff-appellant.
AFFIRMED.