505 So.2d 199 (1987)
Kerrell ANDERSON, Jr., Plaintiff-Appellee,
v.
AETNA CASUALTY & SURETY COMPANY, Defendant-Appellant.
No. 86-402.
Court of Appeal of Louisiana, Third Circuit.
April 8, 1987.
Rehearing Denied April 29, 1987.
*200 Thomas J. Miller, Lafayette, for defendant-appellant.
Preston N. Aucoin, Ville Platte, for plaintiff-appellee.
Before DOMENGEAUX, GUIDRY and STOKER, JJ.
STOKER, Judge.
The defendant, Aetna Casualty & Surety Company (Aetna), has appealed the judgment of the trial court in this worker's compensation action. The plaintiff filed suit for total disability benefits, plus penalties and attorney's fees, for an alleged work-related injury. The trial court awarded benefits for temporary total disability, statutory penalties on the amount due, medical expenses, and $5,000 for attorney's fees. The plaintiff has answered the appeal, seeking an increase in the attorney's fees awarded to cover the additional cost of appeal.
The defendant's assignments of error are:
1) The trial court erred in finding that the plaintiff is entitled to temporary total disability benefits, until he is rehabilitated to perform something other than heavy manual labor.
2) The trial court erred in finding that Aetna acted arbitrarily, capriciously and without probable cause in terminating plaintiff's compensation benefits.
3) The trial court erred in awarding penalties and attorney's fees.

FACTS
The plaintiff, Kerrell Anderson, Jr., was injured while working as a truck driver and laborer for Eugenel Fontenot in his sweet potato farming operation. The accident occurred on February 22, 1984. Anderson was loading a fertilizer tank when he slipped attempting to get off of the tank and twisted his left knee. This was the second injury to the left knee sustained by the plaintiff while working for Fontenot. The earlier accident occurred on November 5, 1982 while plaintiff was climbing into his truck after delivering a load of sweet potatoes to the cannery.
The second injury was treated conservatively initially, but orthoscopic surgery later became necessary. Aetna paid the plaintiff temporary total disability benefits, plus medicals, from the time of the accident until July of 1985, at which time plaintiff was medically released. Aetna, however, *201 continued to pay medical benefits through the date of trial.
After temporary total disability benefits were discontinued, the plaintiff sought a recommendation from the Office of Worker's Compensation. A recommendation was subsequently issued which was rejected by Aetna. This suit was then filed alleging that the plaintiff was totally and permanently disabled as a result of the accident.

THE TRIAL COURT'S REASONING AND DISPOSITION
In order to better understand the issues, both factual and legal, it is appropriate that we set forth in full the reasons for judgment assigned by the trial court. Prior to doing so we note that the formal judgment makes an award of compensation to plaintiff for temporary total disability for the duration of his disability. The trial court observes in its reasons that plaintiff's claim is under the "new workmen's compensation law," and we take this to mean the 1983 amendments to the workers' compensation law, particularly as it relates to different classifications and definitions under LSA-R.S. 23:1221. These amendments were in effect when plaintiff's second accident occurred on February 22, 1984.
The trial court's reasons for judgment are as follows:
"REASONS FOR JUDGMENT
"This is a suit by the plaintiff seeking benefits under the new workmen's compensation law, arising out of an injury he received while in the employ of Eugenel Fontenot on February 22, 1984. The plaintiff contends that he slipped and fell off a fertilizer tank and tractor on the above date.
"Plaintiff contends that because of this accident he injured his left knee; the same knee he injured in a previous accident on November 5, 1982. The defendant, Aetna Casualty & Surety Company, and the workmen's compensation carrier for Eugenel Fontenot, paid compensation benefits to plaintiff until July 16, 1985, at the rate of $156.53 per week.
"The plaintiff settled his case for the 1982 accident and returned to work for his same employer, Eugenel Fontenot, and worked for some months without difficulty, up to the time of his second accident on the 22nd day of February, 1984.
"The plaintiff is a black man, weighing approximately three hundred (300) pounds, and is thirty-three (33) years of age, and has little or no education. His work history consists of farm labor and laborious work.
"The issues in this case are:
"1) Whether or not the plaintiff is entitled to any benefits under the new workmen's compensation act, and if so, whether he is permanently and totally disabled, or whether he is temporarily totally disabled.
"2) Whether the plaintiff is entitled to penalties and attorney's fees, if he would be entitled to workmen's compensation benefits.
"This Court, considering all of the evidence in this case, particularly Dr. Anders' testimony, the plaintiff's age, education, work history, and weight, is of the opinion the plaintiff is entitled to weekly compensation benefits, based on temporary total disability. The Court specifically finds the plaintiff is not entitled to permanent total disability. The Court specifically finds the plaintiff is not entitled to permanent total disability benefits as he does not meet the criteria under the new workmen's compensation act, as defined under R.S. 23:1221(2)(c), and R.S. 23:1221(2)(a), quoted as follows:
"`.... whenever the employee is not engaged in any employment or self-employment as described in subparagraph (2)(b) of this paragraph, compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumptions or disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited *202 to any and all odd-lot employment, sheltered employment, employment while working in any pain notwithstanding the location or availability of any such employment or self-employment.'
"As stated above, the plaintiff is entitled to temporary total disability because he meets the requirements under Louisiana R.S. 23:1221(1), which reads as follows:
"`For injury producing temporary total disability of an employee to engage in self-employment or gainful occupation for wages whether or not the employee is customarily engaged ...' (emphasis added)
"The court does not find as a fact that plaintiff is unable to engage in self-employment or gainful occupation for wages, and is entitled to compensation benefits provided the defendant insurance carrier affords him appropriate training, education and rehabilitation for suitable gainful employment. The question of gainful employment must be considered in the light of each individual complainant.
"The workmen's compensation law is a purely social legislation, including limited amounts of recovery, providing tradeoffs, such as elimination of pain and suffering, loss of consortium, total loss of wages, etc., and the elimination of negligence, contributory negligence, assumption of the risk. In other words, the Louisiana legislation in its wisdom considers the workmen's compensation benefits payable to injured employees a cost of doing business. Many persons, including blind and deaf people, amputees and persons suffering from paralysis, can and do perform gainful employment. If this type of test would be the intention of the statute, no injured employee would be entitled to recover without rehabilitation. Further, the workmen's compensation would have no meaning to help injured employees as everyone under ideal situations can be engaged in self-employment and/or gainful employment. For that reason, in the Court's opinion, one must look to the complainant himself as to what he is capable of doing, without rehabilitation. In this case, the Court feels because of this man's education, work history, age, and physical condition, he cannot perform gainful employment without rehabilitation.
"For the reasons above, this Court finds that the plaintiff is entitled to workmen's compensation benefits based on temporary total disability until he is rehabilitated and educated to perform some type of light gainful employment. To be perfectly frank, this Court honestly is of the opinion it would be very difficult to rehabilitate this man.
"This Court, considering the testimony of the adjuster, Mrs. Grace Hamilton, the doctors' reports, and the finding of the Department of Labor, is of the opinion that the defendant insurance company terminated Mr. Anderson's workmen's compensation benefits arbitrarily and unreasonably. There was never any offer to continue treating this man, or offering him any type of rehabilitation and/or education.
"Therefore, the plaintiff is entitled to attorney's fees and penalties as provided for[sic] law; the attorney's fees are fixed at $5,000.00.
"The defendant is also to pay Dr. Tassin's and Dr. Anders' outstanding bills, and to pay all costs of these proceedings.
"Counsel for plaintiff is directed to prepare a judgment in accordance with these reasons.
"Ville Platte, Evangeline Parish, Louisiana, this 7th day of March, 1986.
 /s/ L.O. Fusilier
 L.O. Fuslier, District Judge
 Division B"

POSITIONS OF THE TRIAL COURT AND THE PARTIES
The plaintiff alleged that his knee injury of February 22, 1984 rendered him totally and permanently disabled. The trial court found that plaintiff was entitled to benefits for temporary disability until he was rehabilitated and educated to perform some type of gainful employment. The formal *203 judgment makes no mention of rehabilitation. On appeal, the plaintiff initially adopted the trial court's holding that he was entitled to benefits based on temporary total disability until he was rehabilitated. In an answer to the appeal, plaintiff again urged that he was entitled to benefits for permanent total disability and asked for an increase in attorney's fees.
The defendant contends that the plaintiff is no more disabled as a result of the second accident than he was after the first accident. The injuries were identical, and the plaintiff was released from his physician's care with the same restrictions. On both occasions plaintiff was cautioned not to do anything requiring prolonged periods of standing or walking, no kneeling, climbing, squatting or carrying heavy loads. He was also cautioned about working around unprotected heights.
The defendant argues that the plaintiff is not temporarily totally disabled because at the time of his injury he was earning only minimum wages, and he failed to prove that he could not be employed in some capacity earning minimum wages after the second accident. The defendant contends that the plaintiff does not require rehabilitation in order to earn minimum wages.

ADDITIONAL FACTS
At the time of trial, plaintiff was 33 years old, was approximately 5 feet 10 inches tall, and weighed 330 pounds. He had a tenth grade education and had done heavy manual labor since the age of 18. After the first accident in 1982, plaintiff's injury required orthoscopic surgery to repair torn medial and lateral menisci in his left knee. Dr. Frank Anders, an orthopedic surgeon, performed the surgery after both the first and second accidents. Dr. Anders discharged the plaintiff in June of 1983 and assessed plaintiff's disability to be a 30% permanent partial impairment of his left leg. In a deposition taken in 1983 Dr. Anders testified that the plaintiff should not engage in picking up heavy objects and walking distances carrying them or climbing, because his knee was sore and hurting and would get worse as time went on.
The plaintiff's first claim for permanent total disability benefits was eventually compromised and settled for the sum of $16,000 in October of 1983. The plaintiff went back to work, according to his testimony, sometime between his discharge date and the time the claim was settled.
The second accident occurred a few short months after plaintiff returned to the very work which he was cautioned not to do by his physician. A second orthoscopy was performed in January of 1985 by Dr. Anders. The surgery revealed that the plaintiff had suffered a torn medial meniscus in the second accident. The plaintiff was released from medical care by Dr. Anders in July of 1985. He assessed an additional 5% impairment of the left knee as a result of the second injury. Dr. Anders again restricted plaintiff's activities to those not requiring long periods of standing, walking, squatting, kneeling, lifting or working around unprotected heights. Relying on this medical discharge, Aetna terminated the plaintiff's compensation benefits two weeks later on July 16, 1985.

CONSIDERATIONS OF ENTITLEMENT UNDER THE FACTS
Under the facts, as revealed by the record, the trial court's ruling and application of law was clearly wrong. The trial court was correct in holding that plaintiff was not entitled to benefits for permanent total disability under LSA-R.S. 23:1221(2) and its subparagraphs. Dr. Anders found that plaintiff could work however restricted. We pretermit for the moment the question of entitlement to benefits for temporary total disability and entitlement to rehabilitation. We do so for a consideration of the residual disability resulting from the second accident as it relates to the disability resulting from the first accident. We believe that the facts call for an application of the rule laid down in Montagnino v. Allstate Insurance Company, 336 So.2d 235 (La.App. 1st Cir.1976), writ denied, 339 So.2d 24 (La.1976).
*204 That case dealt with successive injuries. Although permanent total disability was at issue, the principles announced would apply to the facts of this case. In Montagnino the plaintiff sustained a back injury on October 21, 1971 consisting of a lateral rupture of the L5-S1 disc on the right. In a separate accident on April 25, 1973 plaintiff sustained an injury to the same disc but on the left. Surgery was done after the second accident. Plaintiff's surgeon concluded that the second injury was not an aggravation of the first injury; it was a new injury unrelated to the original injury. The compensation insurer responsible for compensation based on the first injury entered into a court-approved compromise settlement with plaintiff prior to the second surgery. The controversy in the case was between plaintiff and the compensation carrier responsible for the consequences of the second accident and injury.
In Montagnino the plaintiff's injuries clearly resulted from two separate accidents. The medical opinion established that separate injuries were involved. The First Circuit concluded that plaintiff "had regained his ability and capacity to perform hard manual labor prior to the occurrence of his second accident." In arriving at a resolution of the legal issue the First Circuit made the following observations:
"The question raised in this suit is the effect of the appellee's prior injury and settlement on his right to recover in the present case. Where a party has sustained disabling injuries in a prior accident, it is necessary that the circumstances and effects of the prior accident be closely scrutinized with reference to any effect they may have on the case at hand. (Citations omitted.)
"An examination of prior jurisprudence indicates that recovery of workmen's compensation benefits for total and permanent disability, in cases where the injured party has been granted disability benefits for prior injuries, is contingent on three factors. First, the second injury must be the result of a second separate accident; second, the second injury must be unrelated to the first injury; and third, the injured party must not in fact be totally and permanently disabled, as to the type of work he was performing prior to the second injury." (Citations omitted.)
The appellate court in Montagnino concluded that plaintiff had satisfied all three criteria. This case appears to have received very little attention, but it appears to us to represent good law. Based on Montagnino, it appears to us that in order for the plaintiff to have prevailed in his claim for total disability benefits following the second accident he would have to show the following:
1) The second injury must have been the result of a second separate accident.
2) The second injury must have been unrelated to the first injury.
3) The claimant must not in fact have been totally disabled, either permanently or temporarily, as to the type of work he was performing prior to the second injury.
Plaintiff Anderson in this case has clearly satisfied only the first condition. We are inclined to believe he has failed to establish the second condition, but he has clearly failed to establish the third condition. We conclude that plaintiff has failed to prove entitlement to benefits for total disability resulting from his second accident either on a permanent or temporary basis.
We have already concluded that the trial court was correct that the plaintiff was not entitled to permanent total disability benefits. We now consider the trial court's holding that plaintiff was entitled to benefits for temporary total disability. Essentially, although the definitions of permanent and temporary total disability have changed since Montagnino, we think the three-factor test laid out by that case applies whether permanent or temporary total disability is at issue.
LSA-R.S. 23:1221(1) defines temporary total disability and the rate of compensation to be paid as follows:
"For injury producing temporary total disability of an employee to engage in *205 any self-employment or gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability."
It is clear from the evidence before us that the plaintiff is no longer able to engage in employment requiring heavy manual labor. It is equally apparent that the plaintiff was unable to perform heavy manual labor prior to the accident. Both injuries to the left knee occurred when this very heavy man attempted to climb down from or up to unprotected heights. The problem with his knee is further exacerbated by his obesity. However, the plaintiff has failed to prove that he cannot engage in any self-employment or gainful occupation for wages, except for the fact that he lacks certain skills or training. We do not believe that plaintiff is entitled to a determination of temporary total disability simply because of a lack of training or education to perform some other job. In that respect, we disagree with the trial court and find that its determination of temporary total disability was clearly wrong.
Following recovery from the second accident, plaintiff could do what he did following the first accident. The defendant paid compensation during the period that plaintiff was clearly disabled and was continuing to pay his medical expenses at the time of trial.

MAY PLAINTIFF RECOVER TEMPORARY TOTAL DISABILITY UNDER THE ODD-LOT DOCTRINE?
In a supplemental brief filed in this court plaintiff urges that he should at least be allowed to recover temporary total disability benefits under the odd-lot doctrine. As authority for this contention, plaintiff cites a case recently decided by a panel of this court, Thomas v. Elder Pallett & Lumber Sales, Inc., 493 So.2d 1267 (La.App. 3rd Cir.1986), writ denied, 497 So.2d 312 (La. 1986). A panel of this court did in fact hold that under the 1983 amendments the odd-lot doctrine does apply to claims for temporary total disability defined in LSA-R.S. 23:1221(1).
We are not called upon to construe or apply the holding of the Thomas case here, because in the Thomas case only one accident and its results were under consideration. Here, our holding is based on the situation presented by two successive accidents and the result dictated by Montagnino.
Another intriguing issue raised by the Thomas case, which we do not attempt to answer, is the effect of the question of permanency of the disability condition. In Thomas we found that at the time of trial plaintiff Thomas was disabled but he was in a recovery period, and he would most likely recover in a foreseeable period of time. Here, Anderson's condition is permanent, not temporary as in Thomas, and the odd-lot doctrine does not apply to permanent disability as provided in LSA-R.S. 23:1221(2) and its subparagraphs.

IS PLAINTIFF ENTITLED TO REHABILITATION SERVICES?
Without actually ordering the defendant or the employer to provide rehabilitation services to Kerrell Anderson, Jr., the trial court implied in its reasons for judgment that such services were due. In those reasons, quoted above, the trial court stated:
"For the reasons above, this Court finds that the plaintiff is entitled to workmen's compensation benefits based on temporary total disability until he is rehabilitated and educated to perform some type of light gainful employment. To be perfectly frank, this Court honestly is of the opinion it would be very difficult to rehabilitate this man."
Considering the facts of this case, we are inclined to follow the Court of Appeal for the Fourth Circuit in Sino v. Chalmette General Hosp., 489 So.2d 311 (La.App. 4th *206 Cir.1986). In that case the appellate court thought that the trial court correctly dismissed plaintiff's claim for worker's compensation benefits and also rejected a claim for rehabilitation services. In dealing with the latter issue the court of appeal said:
"[4] In appellant's second assignment of error, she urges the court to order that Chalmette General provide her with rehabilitative services persuant to La. R.S. 23:1226. In pertinent part this statute provides:
"When an employee receives an injury covered by this chapter which precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services." LA.R.S. 23:1226
The statute's purpose is to educate and increase the job marketability of employees who cannot return to their former positions. Koslow v. E.R. Desormeaux, 428 So.2d 1275 (La.App. 3rd Cir. 1983). Here, Chalmette-General proved that the appellant could return to her former position. Although she testified that heavy lifting and reaching precluded her from returning to her job, she admitted that janitors performed heavy lifting for the smaller women pot scrubbers and could at the same time help her.
"Moreover, Chalmette General proved that they offered, appellant several less strenuous positions at the same wage which she refused. Since the appellant was not precluded from earning wages equal to those earned prior to the injury, Chalmette General was not under an obligation to provide rehabilitative services. This argument is without merit."
We likewise conclude in this case that plaintiff has failed to show that his second injury prevents the plaintiff from earning wages equal to the wages earned prior to the second injury. In other words, he can do as well as he did following recovery from the first injury.

IS PLAINTIFF ENTITLED TO BENEFITS FOR PERMANENT PARTIAL DISABILITY?
We find that plaintiff does not suffer from a permanent partial disability which is compensable under LSA-R.S. 23:1221(4). Under the technical provisions of the statute as they existed at the time of plaintiff's injury, he would have had to establish that his loss of function or use was greater than 50%, as established in the Guides to the Evaluation of Permanent Impairment by the American Medical Association. LSA-R.S. 23:1221(4)(q). Under present law, which reduces the percentage to 25%, we might be called upon to engage in Montagnino considerations, but since we are not called upon to do so, we express no opinion in that regard.

CONCLUSION
For the foregoing reasons, we reverse the judgment of the trial court which necessarily includes a rejection of plaintiff's claim for penalties and attorney's fees. Accordingly, the plaintiff's action is dismissed with prejudice. The costs of this appeal and the costs incurred in the trial court are assessed to the plaintiff-appellee.
REVERSED.