425 So.2d 307 (1982)
Linda HARRINGTON, Plaintiff-Appellee,
v.
STARLINE, INC., et al., Defendants-Appellants.
No. 82-354.
Court of Appeal of Louisiana, Third Circuit.
December 22, 1982.
McBride & Foret, Robert McBride, Lafayette, for defendants-appellants.
Charles E. Bonnett, Breaux Bridge, for plaintiff-appellee.
Before CULPEPPER, DOUCET and YELVERTON, JJ.
YELVERTON, Judge.
This is a workers' compensation case. Defendant-employer, Starline, Inc., and its insurer, United States Fidelity & Guaranty Company, are appealing the trial court's judgment which held plaintiff-employee, Linda Harrington, partially disabled and entitled to workers' compensation benefits under LSA-R.S. 23:1221(3). We affirm the finding of partial disability.
Linda Harrington was employed by Starline, Inc. as an assembly worker. She operated a five ton punch press which was used in the cutting of metal "mulls". These mulls are sections of aluminum or steel approximately 12 feet long and eight inches wide. The plaintiff, assisted by a co-worker, was required to carry the mulls one by one from their stacked location to the press constantly during the day. Although the *308 weight of a mull was not definitely established, it required two persons to lift one. Plaintiff testified that after the metal had been cut she had to "fight it out" of the machine. At the end of each work day plaintiff was also required to clean up the yard by sorting the good mulls from the defective ones. On October 1, 1979 one of the metal mulls fell on plaintiff's hand causing injury. At trial the parties stipulated that the accident occurred within the course and scope of her employment. They also stipulated that plaintiff received compensation benefits in the amount of $94 a week from October 22, 1979 to June 1, 1980 when the benefits were terminated and that the plaintiff was disabled during this period. The issue which confronted the district court was whether the plaintiff continued to be disabled after June 1, 1980. The trial court, evidently finding the plaintiff incapable of performing her prior duties/work due to substantial pain, determined that she was partially disabled under LSA-R.S. 23:1221(3).
The only issue on appeal is whether or not the finding of the trial court is clearly wrong.
As this court stated in Kelly v. International Union Operating Engineers, 386 So.2d 1060 (La.App. 3rd Cir. 1980):
Under LSA-R.S. 23:1221(3), an injured workman is partially disabled if, because of his injury, he cannot return to his former employment but can perform gainful employment in another position. Kilbourne v. Armstrong, 351 So.2d 802 (La.App. 1 Cir.1977); LeBlanc v. Commercial Union Assurance Company, 349 So.2d 1283 (La.App. 1 Cir.1977), writ denied, 351 So.2d 174 (La.1977). A worker is also partially disabled where he would experience substantial pain when working in his former occupation, but where he could work in other types of jobs without experiencing such pain. McBroom v. Argonaut Insurance Company, 370 So.2d 212 (La.App. 3 Cir.1979), writ denied, 371 So.2d 1342 (La.1979); Conlay v. Houston General Insurance Company, 370 So.2d 196 (La.App. 3 Cir.1979); writ granted 371 So.2d 618 (La.1979).
It is well settled that an injured worker who suffers substantial pain in performing his former job or who cannot engage in any gainful employment without incurring substantial pain is disabled, either totally or partially. Phillips v. Dresser Engineering Company, 351 So.2d 304 (La.App. 3 Cir. 1977), writ denied, 353 So.2d 1048 (La.1978); Rachal v. Highlands Insurance Company, 355 So.2d 1355 (La.App. 3 Cir.1978), writ denied, 358 So.2d 645 (La.1978); Whitaker v. Church's Fried Chicken, Inc., 387 So.2d 1093 (La.1980).
We note at the outset that physical inability to return to work and inability to return to work due to substantial pain are questions of fact. The determination of fact made by a trial court will not be disturbed when there is evidence before the court, which evidence, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's findings, unless those findings are clearly wrong. Crump v. Hartford Accident and Indemnity Company, 367 So.2d 300 (La.1979).
The medical evidence consisted of the testimony of Dr. Harold Hebert and the depositions of Dr. Ladislas Lazaro, III, and Dr. Terry Cromwell. Dr. Hebert, an orthopedic surgeon, examined plaintiff twice, first on October 9, 1979, shortly after her injury, and the last time on June 2, 1980, following surgery which was performed by another physician. Dr. Hebert stated that plaintiff was experiencing the same degree of pain on the top of her right hand on both examinations. He said her complaints were consistent with her injury. When asked to assume she was still having pain at the time of trial (September 9, 1980), he responded that this also would be consistent for this type of injury. He did not believe the pain would be permanent, but he was unable to place a time limit on how long the plaintiff would experience the pain.
The deposition of Dr. Lazaro reveals that he is an orthopedic surgeon specializing in hand surgery. Plaintiff was referred to *309 him by Dr. Hebert. The plaintiff's hand as a result of the accident was severely contused on the backside of the wrist and on the thumbside of the hand. There was pain and tenderness on the backside of the hand and wrist. The plaintiff was diagnosed as having radial nerve neuritis with causalgic associated pain syndrone. A neurectomy was performed on April 7, 1980 resulting in a residual loss of sensation on the backside of the hand. Tests performed after surgery showed that plaintiff's gross grip and pinch strength had decreased and she was continuing to have pain and swelling. The doctor felt plaintiff's pain and swelling would diminish in six to eight months[1] eventually reaching a partial permanent impairment of 12%. The doctor was of the opinion that disuse of the hand tends to intensify the pain and recommended increased utilization of the hand. He explained that pain resulting from this type of injury was always out of proportion to the injury, but he did not feel that the pain was excruciating or severe enough to be incapacitating.
Dr. Lazaro felt that plaintiff could return to her former work duties. In fact, he thought that use of the hand at work would be beneficial and expedite recovery. However, his deposition reveals that Dr. Lazaro did not clearly understand the nature of plaintiff's work. For example, he mentioned that plaintiff could operate a clothes presser where the power operations are in the foot, or a small drill press that does not require a lot of power, or a conventional sewing machinework that requires more dexterity than strength in the use of the hand. Plaintiff's actual work, the operation of a punch press and handling heavy mulls, was much more strenuous than the work examples mentioned by the doctor. The doctor conceded that if she were required to constantly grip more than 20 to 25 pounds then she would suffer pain, and that she should work under restrictions that prevent inflicting further damage to the hand.
Dr. Cromwell, another orthopedist specializing in hand surgery, examined plaintiff on June 17, 1980 for evaluation purposes. She had complaints of pain and swelling and weakness in the right hand. This doctor saw the swelling and noted obvious pain upon movement of the wrist. Testing revealed that plaintiff's right hand had only half the grip strength of the left even though plaintiff was right handed. Dr. Cromwell felt that plaintiff had been cooperative. His diagnosis was a resultant or residual tenosynovitis involving the extensor tendons on the dorsum of the right wrist and hand and possibly involving the capsule or ligament which hold the carpal bones or the wrist together. The doctor explained that this condition is a reactive inflammation around the tendons caused by the scar tissue staying inflammed, sore and swollen. The doctor agreed with Dr. Lazaro that when she reached maximum recovery she would have a disability of 12% impairment to the hand. At the time of his examination, however, he assessed 100% impairment if heavy lifting was required or anything which demanded a strong sustained grasp. This impairment was due to the pain and loss of grip strength he found in the hand. The doctor stated that her condition would be slow in healing since use of the hands tends to cause reinjury. At some uncertain point in the future the pain will subside. In the meantime, according to Dr. Cromwell, weakness and the dropping of objects are to be expected with this type of crushing injury, and plaintiff will suffer pain and discomfort if required to lift heavy objects on a repetitive basis. She could not do a job that required a strong grip all day. She could do desk work or a little typing or answering a phone.
The plaintiff's testimony revealed that she has been unable to do housework since the accident due to the pain and swelling in her hand and that she is unable to lift heavy objects without dropping them, again because of pain. She also stated that the pain has caused trouble sleeping. This testimony was corroborated by that of her sister and the stipulated testimony of her mother.
*310 After careful consideration of the evidence presented including both medical and lay testimony, we fail to find error on the part of the trial court in finding the plaintiff partially disabled under LSA-R.S. 23:1221(3). Plaintiff has demonstrated she is incapable of returning to her former employment because of a combination of pain and loss of grip strength.
For these reasons the judgment of the district court is affirmed at appellant's costs.
AFFIRMED.
NOTES
[1] The deposition was taken on September 2, 1980.