493 So.2d 1267 (1986)
James Albert THOMAS, Plaintiff-Appellee,
v.
ELDER PALLET & LUMBER SALES, INC., Defendant-Appellant.
No. 85-973.
Court of Appeal of Louisiana, Third Circuit.
September 10, 1986.
Writ Denied November 21, 1986.
*1268 David K. Balfour, Lafayette, for defendant-appellant.
Jacque B. Pucheu, Jr., Eunice, for plaintiff-appellee.
Before STOKER, KNOLL and KING, JJ.
KNOLL, Judge.
In this worker's compensation suit Elder Pallet & Lumber Sales, Inc. (hereafter Elder) appeals the judgment of the trial court awarding James Albert Thomas, temporary total disability benefits and rehabilitation expenses. The trial court found Thomas temporarily totally disabled on the basis of Thomas being an odd lot and/or working in pain.
Elder contends the trial court erred: (1) in finding Thomas temporarily totally disabled; (2) in applying the odd lot doctrine to the Louisiana Worker's Compensation Act as amended in July 1983; (3) in applying the facts and evidence to find Thomas entitled to an odd lot classification under Section 1221(1) of the 1983 Worker's Compensation Act; (4) in finding Thomas was *1269 entitled to supplemental earnings benefits under Section 1221(3) of the 1983 Worker's Compensation Act; (5) in finding that Thomas was entitled to training and rehabilitation under Section 1226 of the 1983 Worker's Compensation Act; and (6) in denying Elder reimbursement from Thomas for overpayment of worker's compensation benefits. We affirm.

FACTS
The learned trial judge handed down written reasons for judgment setting forth the facts of this case, which we incorporate herein:
"James Thomas was injured on the job and claims workmen [sic] compensation benefits of his employer, Elder Pallet and Lumber Sales, Inc. The suit is under the `new' Act. He was injured on August 9, 1983.
The medical testimony consists of one witness, Dr. Lazaro, an Orthopedist, with a specialty in hands.
The doctor says the plaintiff caught the fingers of his left hand in a sprocket.
The index finger had `abrasions and lacerations'.
The middle (long) finger had deep lacerations into the end and last joint. The doctor repaired this, but the finger was left with a 35° to 40° curl. The doctor assigns 35% permanent impairment, which cannot be helped medically.
The ring finger had deep lacerations into the last joint and end; and fracture of the last joint and last phalange. The doctor first put a pin in the joint, removed it about five or six weeks later, and then fused the distal joint. He assigned 35% to 37% disability (permanent, with no way to improve same medically) then settled on the 37% estimate of disability of the finger.
The doctor says that with relation to the hand, the fingers are valued at the following percentages:

Thumb 50% of hand
Index finger 20% of hand
Long finger 15% of hand
Ring finger 10% of hand
Little finger 5% of hand.

Applying 35% and 37% to the long and ring fingers, the percentages above would yield less than a 15% impairment of the hand, but the doctor points out that when two fingers are involved, the basic percentage relationship to the hand is increased.
The doctor discharged plaintiff on November 15, 1983, with no restrictions as to what he could do. He said that hand was not the same as before the injury, but put no limitations on what the man could try to accomplish.
The plaintiff is a 27 year old black male; is married; and has two children, ages 4 and 5. He was a good worker. He finished 12 grades and worked as a manual laborer for the railroad and the telephone company; did a little carpentry work; and wound up as a sawyer at a sawmill, where he was hurt.
While sawing, he basically sat at a panel with 20 button[s] ... This controlled the timber being sawed, and required coordination of the fingers to keep the saw going, the timber properly placed, and all the elements of the job of sawing, working together. In addition, he did manual labor on the yard, and of course, had to maintain the machinery, and keep the machinery from jamming,in fact, that is how he got his fingers caught in the machinery. The Court finds as facts:
1. Because of his disability to the fingers of his left hand he has lost his dexterity and his ability to handle 20 buttons with his left hand.
2. His job was not simply pushing buttons.
He stayed 7 days in the hospital and went through surgery with both the long and ring fingers, and what might be called surgery to the index finger. He underwent physical therapy until October of 1983, after starting August 22, 1983, (for the benefit of the thumb and little finger, and still claims problems with the little finger) and remains with a stiff ring finger and a curled long finger. He can do `rough' grabbing with his left *1270 hand, but cannot do `fine' grabbing or gripping.
He collected workmen's compensation from August 10, 1983 to December 27, 1983.
After discharge, he was offered his `old' job, but with reservations,he was told he could sit on a stool, and watch the replacement sawyer operate until he could `get on his feet'."
Thomas did not accept Elder's job offer because his hand was hurting him and he had to keep his hand "cool". Since the accident occurred, two mechanics were hired to replace Thomas.

DISABILITY
The trial court found Thomas temporarily totally disabled under LSA-R.S. 23:1221(1), which provides:
"Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
(1) Temporary total. For injury producing temporary total disability of an employee to engage in any self-employment or gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability."
The issue of disability is to be determined by the totality of the evidence, including both lay and medical testimony. Augustine v. Courtney Const. Co., Etc., 405 So.2d 579 (La.App.3rd Cir.1981), writ denied, 407 So.2d 735 (La.1981). On appellate review, the trial court's findings of work-connected disability are entitled to great weight. They should not be disturbed where there is evidence before the trier of fact which, upon the latter's reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's findings, unless clearly wrong. The reviewing court should not disturb reasonable inferences of fact by the trial court, even though the reviewing court is of the opinion that other evaluations and inferences are as reasonable. Crump v. Hartford Acc. & Indem. Co., 367 So.2d 300 (La.1979).
In the present case, Thomas was employed as a sawman. His duties entailed: operating a panel of 20 buttons which controlled a large power saw that cut timber; maintaining the machinery, which included changing the saw blades and oiling the saw; repairing the machine; and operating a forklift. The larger saw blades weighed approximately 25 pounds each. Thomas performed all of his duties without assistance, and all of his duties required the use of two good hands and good grips.
Patrick Carmouche, a fellow sawman at Elder, testified that he and Thomas sometimes operated a notching machine, which required the use of two good hands and good grips. Rose Zerange, the foreperson who supervised Thomas, testified that all maintenance work on the machine Thomas operated required the use of two good hands.
Dr. Lazaro testified that Thomas' grip in his left hand will be affected because Thomas can no longer bend the terminal joint of certain fingers. Thomas testified that he does not have a good grip in his left hand because his fingers are twisted and they no longer have adequate motion or gripping strength, therefore, he cannot perform his employment duties.
Elder contends that Thomas' disability ceased as of November 15, 1983, when Dr. Lazaro released Thomas from his care and stated that Thomas could return to his former duties with no restrictions. Elder further contends that Thomas' testimony was not credible. The only witnesses who testified concerning Thomas' ability to return to work were Thomas and the treating physician, Dr. Lazaro.
The extent and duration of disability in this type of case is a factual matter to be determined by the trial judge and his decision should not be reversed unless it is clearly wrong. The same applies *1271 to the issue of whether or not a plaintiff's pain is substantial enough to render him disabled. Luke Brown v. American Mutual Ins. Co., 491 So.2d 810 (La.App. 3rd Cir.1986).
We find that Thomas proved by a preponderance of evidence that he suffered a disability which continued through the date of trial. The record shows that Thomas was in a recovery period, but that he will most likely recover within a foreseeable period of time. Accordingly, we cannot say that the trial court was clearly wrong in its finding of temporary total disability.

ODD LOT STATUS AND REHABILITATION
Elder contends that the trial court erred in applying the odd lot doctrine to the 1983 Worker's Compensation Act, and in finding that Thomas was entitled to training and rehabilitation under Section 1226 of the 1983 Act. On these issues, the trial court reasoned as follows:
"The determination must then be made as to whether he [Thomas] fits any of the categories of the new Workmen [sic] Compensation Act. This is a difficult decision, for, as the attorneys point out, there are not enough decisions to have clear intepretations of this law.
Under the old law, he would clearly be partially disabled, as set forth in Harrington [v. Starline, Inc.], 425 So.2d 307 [(La.App. 3rd Cir.1982.)]. And, in fact, could be an `odd lot' as in Turner [v. American Mutual Insurance Co.], 390 So.2d 1330 [(La.1980.)].
Judge Dennis made two interesting observations in Turner:
`Under the odd lot test as announced in Oster v. Wetzel Printing, Inc., supra, an injured employee is entitled to total, permanent disability compensation if he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist. This determination is made after scrutiny of the evidence of the worker's physical impairment as well as his mental capacity, education, and training. If the worker establishes that he falls into the odd-lot category, he is entitled to total, permanent disability compensation unless the employer or his insurer is able to show that some form of suitable work is regularly and continuously available to the employee within reasonable proximity to the worker's residence.
The trial court and court of appeal, of course, did not attempt to decide the case in accordance with the odd-lot doctrine. Although we mean no criticism of their failure to do so, in the absence of an expression by this Court on the subject, the result reached below illustrates the dangers of a simplistic or mechanical application of statutory rules in the field of workers' compensation.' (Underscoring supplied.)
Let us then look at the new law.
R.S. 23:1221(2) providing for `permanent total' is, without a doubt, inapplicable herein. It provides basically for two contingencies:
1. Any work is counted
2. Odd-lot employment, sheltered employment or working with pain are not exceptions.
R.S. 23:1221(1) has a subtle difference. It provides for `Temporary Total'. Like permanent total, it again provides that any work is counted. But, it does not exclude the jurisprudential exception of odd lot, sheltered employment, or working with pain. This Court, since the inception of the new Statute, has taken the position that odd lot, sheltered, or working with pain, is available to a claimant, if he fits any one of the three exceptions, and if he is temporarily disabled.
* * * * * *
In the cast [sic] at bar, in the Court's opinion, the plaintiff has proven his disability; and, the employer has proven the fact that the plaintiff is at least odd lot, as he has offered him, after medical discharge, a sheltered, or structured job. The plaintiff, in fact, said he could not *1272 take the job, as he could not work with his hand, as it was hurting him, and he had to keep it `cool'.
On the record, as made up, this would seem to indicate to the Court his inability to earn full wages.
This Court believes and finds that this man is 15%, or more, disabled in the hand, by virtue of the fact that he has a stiff ring finger and a curled-in long finger, together with some trouble with the little finger. The Court does not believe he is fit to do the work he has been doing, or similar work, and will only be able to do work after he is trained. It believes that after training and rehabilitation, under 23:1226, he can be returned to some gainful employment. (See discussions of presumptions and proof in Turner, supra.)
Accordingly, the Court is going to find him temporarily totally disabled, on the basis of being an odd lot and/or working with pain; and the fact that he needs rehabilitation to work in a new employment.
The Court further invokes Section 1226 and orders rehabilitation."
After a careful review of the 1983 Worker's Compensation Act, we agree with the trial court's position that the odd lot doctrine does apply to claimants who are temporarily totally disabled under the 1983 Act.
Elder places much emphasis on the fact that it offered Thomas another job at the plant earning the same pay. In view of Thomas' disability and Elder's right to terminate employment at any time, we do not find this contention persuasive. Unless Elder guarantees Thomas a job on a permanent basis, Thomas will remain "handicapped" in the labor market because of his disability. Rehabilitation under Section 1226 of the 1983 Worker's Compensation Act will ensure Thomas' ability in the future to remain competitive in the labor market by rendering him competent in a new skill. Accordingly, we do not find that the trial court erred: in applying the odd lot doctrine; finding Thomas classified as an odd lot claimant; and ordering rehabilitation.

SUPPLEMENTAL EARNINGS BENEFITS
Elder contends the trial court erred in finding Thomas entitled to supplemental earnings benefits under Section 1221(3) of the 1983 Worker's Compensation Act, which provides in pertinent part:
"Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
* * * * * *
(3) Supplemental earnings benefits.
(a) For injury resulting in the employee's inability to earn wages equal to ninety per cent or more of wages at time of injury, supplemental earnings benefits equal to seventy-four percent of the difference between ninety percent of the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or selfemployment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis...."
Elder argues that since Thomas was offered an opportunity to return to his former position at his former rate of pay, he is not entitled to supplemental earnings benefits. The record shows that since Thomas sustained the injury to his left hand, he has not engaged in other employment. For reasons aforestated we find Thomas temporarily totally disabled, therefore, he is clearly entitled to supplemental earnings benefits if he engages in gainful employment during the period of his temporary total disability.

*1273 REIMBURSEMENT FOR OVERPAYMENT OF BENEFITS
Elder claims reimbursement of $671.52 for benefits paid to Thomas from November 15 to December 27, 1983. Elder contends that benefits to Thomas should have ceased as of November 15, 1983, when Dr. Lazaro released Thomas to return to his former employment, but that benefits were erroneously continued until December 27, 1983. Since we are affirming the trial court's award of temporary total disability benefits from the date of injury, August 9, 1983, until Thomas is rehabilitated or until the judgment is modified due to a change in his condition under LSA-R.S. 23:1226 and 1331, there is no reimbursement due.
For the foregoing reasons, we affirm the judgment of the trial court. All costs of this appeal are assessed to appellant, Elder Pallet & Lumber Sales, Inc.
AFFIRMED.