505 So.2d 862 (1987)
Bill JOHNSON, Appellee,
v.
MONROE PULPWOOD COMPANY, INC. and American Mutual Liability Insurance Company, Appellants.
No. 18541-CA.
Court of Appeal of Louisiana, Second Circuit.
April 1, 1987.
*863 Davenport, Files & Kelly by William G. Kelly, Jr., Monroe, for appellants.
Culpepper, Teat, Caldwell & Avery by James D. Caldwell, Jonesboro, for appellee.
Before HALL, JASPER E. JONES and NORRIS, JJ.
NORRIS, Judge.
In this workers compensation case, Bill Johnson, a pulpwood contractor, sustained an injury to his right thumb. He underwent two surgeries and over a year of treatment when a physician declared him able to return to work. The insurer ceased paying benefits and plaintiff sued. The trial court found him permanently and totally disabled. The insurer and employer now appeal; Johnson has answered, seeking penalties and attorney fees. For the reasons expressed, we reverse the judgment insofar as it finds Johnson permanently and totally disabled, and render a judgment of temporary, total disability. We also deny the relief requested in Johnson's answer to the appeal.

FACTS
Johnson conducted a small pulpwood production operation. He was one of many contractors who supplied wood for Monroe Pulpwood. He was responsible for "hustling" timber, or searching for harvestable trees, checking the boundaries, getting in touch with the owners and making the purchases. He owned his truck, tractor and saws; he would go out with a crew of three or four men to cut the wood, trim it, drag it to the truck, load it and then drive it to the mill. The mill would pay him for the wood, withholding stumpage and amounts advanced for gasoline and mechanical work. Out of this balance, Johnson was responsible for paying wages to his crew. He was the boss of the operation, telling everyone what to do; but when they were in the woods together, he was just as involved in the cutting and loading as any of the hired hands.
While he was cutting some wood on Saturday, January 28, 1984, a large limb fell on him. He threw up his right hand to deflect it and was successful, but the impact hurt his thumb. He went to the emergency room at Glenwood Hospital in West Monroe. There his thumb was placed in a splint, his hand in a sling, and an icebag was applied. Two days later he went to Dr. Bailey, an orthopedist in Monroe. Dr. Bailey found a fracture of the thumb metacarpal, near the wrist. He reset the thumb, put it in a cast and prescribed pain pills. Six weeks later, he removed the cast and determined that the fracture had healed with good alignment. He recommended *864 that Johnson return to work, although he expected a small permanent impairment. Johnson said he tried to work but could not because the thumb would swell up and burn like fire. Even though Dr. Bailey expected this to improve with time, Johnson insisted on surgery to relieve the pain. Dr. Bailey performed an osteotomy on April 16, inserting a metal plate and screws. The thumb stayed in a splint for over a month and the X-rays looked good. On May 30, Dr. Bailey removed the cast and recommended active motion but no work; by June 27 he suggested a return to work. On August 21, he removed the screws and plate, once again telling Johnson to resume his old work. He estimated a 10% permanent impairment of the MCP or middle joint.
In November, Johnson once again complained of pain when he attempted to use the chain saw. Dr. Bailey nevertheless recommended work and prescribed an anti-inflammatory medicine. By December 12, amid Johnson's continued complaints of swelling and fiery pain, Dr. Bailey recommended he not return to work. He assessed a 15-20% disability of the thumb and a 10-15% of the hand as a whole. He noted that although Johnson had 80% of the normal range of motion in his thumb, his pain would probably prevent the effective and safe use of a power saw. During all this time, the insurer paid weekly benefits and medicals.
Several months later, in September 1985, Johnson was sent to Dr. Brown, another orthopedist in Monroe, who happened to have treated Johnson for a back injury some years before and, coincidentally, was associated with the same clinic as Dr. Bailey. Dr. Brown compared the left and right hands; the contour was the same. Like Dr. Bailey, he found the MCP or middle joint had 80-90% of normal motion. He found the top joint had only 50% of normal motion, but he attributed this to osteoarthritis, and thought the real cause of pain was tendonitis. He assessed a 25% disability of the thumb and 10% of the whole hand. He thought the pain should not be disabling and should actually abate as the hand was gradually used. He concluded that the injury should not interfere with Johnson's ability to use a chainsaw, drive a truck or load logs. On the basis of Dr. Brown's report, the insurer discontinued benefits on November 4, 1985.
Johnson testified at trial in March 1986 that the thumb still hurt with a fiery pain; he was still taking Dr. Bailey's medicine. He insisted he could not keep a firm grip on a chainsaw or a steering wheel and that jolts or bumps, such as he would receive from driving a truck or tractor in the woods, were painful. He admitted, however, that since the accident he had not attempted any aspect of his work except the sawing. R.p. 70-71. He also testified that in a pulpwood crew, no one is ever assigned to just one task, like driving the truck or turning the winch; on the contrary, everyone at times does a little bit of everything. He complained that after his injury, his wife took over the operation and had to hire another man. Paying this extra wage has left very little for the Johnsons out of the money from Monroe Pulpwood.
Further to complicate matters, in October 1985 Monroe Pulpwood stopped accepting wood deliveries from Johnson and his wife. This move, due to decreased orders from the Manville Forest Products plant, has almost curtailed Johnson's operations. Johnson has a tenth grade education, has produced pulpwood all his adult life and has no other training or skills.
The trial court, in written reasons for judgment, admitted difficulty in deciding whether Johnson's pain was such as would prevent him from engaging in "any self-employment or occupation for wages" under the statute, LSA-R.S. 23:1221(2).[1] *865 However, he was impressed with the complaints of pain, verified by Johnson's wife and accepted by Dr. Bailey. He also noted the rule of liberal construction in favor of extending benefits. See, e.g., Johnson v. Ins. Co. of N. Amer., 454 So.2d 1113 (La. 1984); Long v. Moses Motor Hotel Inc., 460 So.2d 1156 (La.App. 2d Cir.1984). He therefore found Johnson permanently and totally disabled, awarding benefits for the duration of the disability. He also awarded attorney fees in accordance with LSA-R.S. 23:1141B. The insurer and employer have appealed, claiming Johnson did not show by clear and convincing proof that he was permanently disabled. Johnson has answered requesting penalties and additional attorney fees.

DISCUSSION
The applicable statute is LSA-R.S. 23:1221(2). An injured employee must prove permanent, total disability by clear and convincing evidence, to the exclusion of odd-lot employment, sheltered employment and working in any pain. Until the statutory scheme was overhauled in 1983, a claimant could receive benefits for permanent, total disability if he proved by a preponderance of the evidence that he would have to work in substantial pain. See, e.g., Henson v. Handee Corp., 421 So.2d 1134 (La.App. 2d Cir.1982); Malone and Johnson, Workers' Compensation, § 277. The amendment, however, expressly elevated the standard of proof and eliminated the element of working in pain from permanent, total cases. LSA-Acts 1983, Ex.Sess. No. 1; Malone & Johnson, § 276.5 (1987 p.p.).
Thus the issue is whether Johnson proved by clear and convincing evidence that he is unable to engage in any self-employment or occupation for wages under the statute. This standard of proof was simply not met. Both physicians agreed that Johnson's disability was in the range of 10-15%. There was no evidence to suggest that this amount of disability would prevent him from any self-employment or occupation for wages. Johnson significantly noted that of the several different tasks involved in his pulpwood operation, he had attempted only one, using the chainsaw. Both physicians thought he could perform the other tasks, such as turning the winch, driving the tractor, loading the timber and driving the truck. A claimant cannot prove permanent disability by asserting only his subjective belief that he cannot work. While we realize that most employees in the industry are expected to perform more than one task, the favorable medical evidence shows that Johnson can do all the required tasks but one. He admits having attempted nothing but sawing. Added to this is the evidence of a relatively low disability rating. We must hold that Johnson failed to meet the stringent standard of clear and convincing evidence. The judgment must be reversed insofar as it awarded him benefits for permanent, total disability.
Recent jurisprudence has authorized us to examine a case for temporary, total disability when we find the plaintiff has failed to show permanent, total. Price v. *866 Fireman's Fund Ins. Co., 502 So.2d 1078 (La.1987). The 1983 amendments to R.S. 23:1221(1) left intact for temporary, total cases the traditional standard of preponderance of evidence.[2]Price v. Fireman's Fund, supra; Brewster v. Manville Forest Products Inc., 469 So.2d 340 (La.App. 2d Cir.1985). The 1983 amendments also failed to exclude from temporary, total cases the application of odd lot, sheltered employment and working in pain. Our brethren on the third circuit have specifically held that the odd lot doctrine is viable in temporary, total cases. Thomas v. Elder Pallet & Lumber Sales Inc., 493 So.2d 1267 (La.App. 3d Cir.1986), writ denied 497 So.2d 312 (La.1986). We conclude that the working in pain doctrine is likewise still applicable in temporary, total cases.
Under the working in pain doctrine, if the claimant's injuries are such that the performance of important functions of his old trade involve substantial pain and suffering, then he is deemed totally disabled. See Walker v. Gaines P. Wilson & Son, 340 So.2d 985 (La.1976); Malone & Johnson, § 273.
The issue is therefore whether Johnson has qualified for temporary, total benefits. This is determined from the totality of evidence, including both lay and medical testimony. Augustine v. Courtney Const. Co., 405 So.2d 579 (La.App. 3d Cir.1981), writ denied 407 So.2d 735 (La.1981). The trial court's determination is entitled to great weight and will only be disturbed if it is clearly wrong. Crump v. Hartford Acc. & Indem. Co., 367 So.2d 300 (La.1979). We note that Johnson's graphic complaints of pain were substantiated by Dr. Bailey and accepted by the trial judge. Even Dr. Brown admitted that Johnson was in some pain, if not disabling pain. Dr. Bailey added that this pain would plague him in any endeavor, whether it was making a living or playing golf. Bailey's 2d Dep., 30. The evidence therefore preponderates to show that the pain is substantial enough to keep Johnson from working. This translates into a temporary disability under R.S. 23:1221(1).
The evidence also shows that Johnson is in a period of recovery and his pain will not always be substantial. Dr. Bailey said,
the majority of his pain that he's going to have, as it relates to the injury and the surgery, would be, of course, within the first years. And after that what he's going to have is going to be, essentially, permanent. Bailey's 2d Dep., 30. (Emphasis added.)
This concretely recognizes that the disabling dimension of the injury is only temporary and brings the case squarely into the purview of the statute covering temporary, total disability. Healing and gradual use of the hand will bring Johnson to a plateau and make his pain insubstantial, but this will require a few "years" after the last surgery. When a satisfactory degree of healing is reached, Johnson's condition will be deemed "permanent" and the residual pain will no longer be grounds for disability. Price v. Fireman's Fund, supra. As of March 1986, however, when Dr. Bailey was deposed and the trial was conducted, only 19 months had passed since the last surgery and Johnson was still suffering from temporary disability under the statute.
The correct decision would have been to hold Johnson temporarily and totally disabled. We will therefore amend the judgment appropriately.
In his answer to appeal, Johnson seeks penalties for termination that he deems "arbitrary, capricious and without probable cause." See LSA-R.S. 23:1201.2. We have repeatedly held that when an insurer relies on a bona fide work release to discontinue benefits, there is no ground for *867 penalties and fees. Lewis v. Alloy Casting of La., 465 So.2d 847 (La.App. 2d Cir.1985); Johnson v. Ins. Co. of N. Amer., supra. Penalties and fees are particularly inappropriate when, as here, the insurer's position on appeal was meritorious. The claim is therefore denied.
As for attorney fees, the trial court awarded the statutory maximum in accordance with R.S. 23:1141 B.[3] There is no authority for additional fees in the absence of proof that the termination is arbitrary, capricious and without probable cause. Since this proof was not made, there is no basis for additional fees. The claim is denied.
For the reasons expressed, the judgment is reversed insofar as it awarded benefits for permanent, total disability. The decree is amended to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, BILL JOHNSON, and against defendants, MONROE PULPWOOD COMPANY, INC. and AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, for workers' compensation benefits for temporary, total disability at the rate of TWO HUNDRED, FORTY-FIVE and NO/1.00 ($245.00) DOLLARS per week from November 4, 1985 until the termination of disability, with interest at the rate of Twelve percent (12%) per annum on each past due payment until paid.
In all other respects that judgment is affirmed. Costs are assessed equally to appellants and appellee.
REVERSED AND RENDERED.
NOTES
[1] LSA-R.S. 23:1221(2) provides, in part:

Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
(2) Permanent total.
(a) For any injury producing permanent total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds percent of wages during the period of such disability.
(b) For purposes os Subparagraph (2)(a) of this Paragraph, compensation for permanent total disability shall not be awarded if the employee is engaged in any employment or self-employment regardless of the nature or character of the employment or self-employment including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain.
(c) For purposes of Subparagraph (2)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (2)(b) of the Paragraph, compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
[2] LSA-R.S. 23:1221(1) provides:

(1) Temporary total. For injury producing temporary total disability of an employee to engage in any self-employment or gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of injury was particularly fitted by reasons of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.
[3] LSA-R.S. 23:1141 B provides:

B. In no case shall the fees of an attorney who renders service for an employee coming under this Chapter exceed twenty percent of the first ten thousand dollars of any award and ten percent of the part of any award in excess of ten thousand dollars.