525 So.2d 1272 (1988)
Chester L. CHARLES, Jr., Plaintiff-Appellee,
v.
AETNA CASUALTY AND SURETY COMPANY, et al., Defendants-Appellants.
No. 87-422.
Court of Appeal of Louisiana, Third Circuit.
May 18, 1988.
*1273 C. Jerre Lloyd, Lake Charles, for defendants/appellants.
McHale, Bufkin & Dees, Louis D. Bufkin, Lake Charles, for plaintiff/appellee.
Before LABORDE, KNOLL and KING, JJ.
KNOLL, Judge.
Lakeside National Bank (hereafter Lakeside) and its worker's compensation insurer, Aetna Casualty & Surety Company (hereafter Aetna), appeal the judgment of the trial court which found Chester L. Charles, Jr. (hereafter Charles), temporarily totally disabled. In addition the trial court found that Charles had unpaid medical expenses totalling $2,226.35, and that the failure of Aetna to pay the medical expenses was arbitrary and capricious thus making it and Lakeside liable, in solido, for attorney's fees of $1,500.
Lakeside and Aetna appeal, contending that the trial court erred in: (1) finding that under LSA-R.S. 23:1221(1) Charles was temporarily totally disabled; (2) finding there were $2,226.35 in unpaid medical expenses connected to Charles' work-related accident; and (3) awarding $1,500 attorney's fees to Charles because Aetna was arbitrary and capricious in not paying all medical expenses. We amend and affirm, finding Lakeside was incorrectly cast in solido with Aetna for the payment of attorney's fees.

FACTS
At trial it was stipulated that: Charles sustained a twisting type injury to his lower back on March 12, 1984, while acting within the course and scope of his employment with Lakeside; at the time of trial Aetna was paying Charles weekly compensation benefits of $163.41, and its payments of weekly benefits were current; and, two orthopaedists, Dr. Lynn Foret and Dr. William Akins, treated Mr. Charles subsequent to the work-related accident.

EXTENT OF DISABILITY
Lakeside and Aetna contend that the trial court erred in finding Charles temporarily totally disabled. They argue that the only testimony about disability was that Charles was disabled because of pain, which would be insufficient to establish temporary total disability under the Worker's Compensation Act of 1983. Moreover, Charles failed to prove that he suffered substantial pain by clear and convincing evidence, as required by LSA-R.S. 23:1221(3)(c)(ii) to establish a worker's entitlement to supplemental earnings benefits, so that he could not perform employment offered. We disagree.
LSA-R.S. 23:1221 provides, in pertinent part:
Compensation shall be paid under this Chapter in accordance with the following schedule of payments: (1) Temporary total. For injury producing temporary total disability of an employee to engage in any self-employment or gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability."
In Thomas v. Elder Pallet & Lumber Sales, Inc., 493 So.2d 1267 (La.App. 3rd Cir.1986), writ denied, 497 So.2d 312 (La. 1986), we specifically held that the 1983 amendments to R.S. 23:1221(1) failed to *1274 exclude from temporary, total disability, the application of odd lot, sheltered employment, and working in pain. Under the doctrine of working in pain, if the claimant's injuries are such that the performance of important functions of his old trade involve substantial pain and suffering, then he is deemed disabled. Johnson v. Monroe Pulpwood Co., Inc., 505 So.2d 862 (La.App. 2nd Cir.1987).
The issue of disability is determined by the totality of the evidence, including both lay and medical testimony. On appellate review, the trial court's findings of work-connected disability are entitled to great weight. They should not be disturbed where there is evidence before the trier of fact, which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's findings, unless clearly wrong. The reviewing court should not disturb reasonable inferences of fact by the trial court, even though the reviewing court is of the opinion that other evaluations and inferences are as reasonable. Thomas, supra at 1270.
In the case sub judice, Charles was employed at the time of the accident as a janitor/custodian at Lakeside. His duties entailed general cleaning associated with janitorial work, and the moving/lifting of desks, cabinets, boxes, and signs.
Charles testified that as soon as he moved a sign at the drive-in branch of Lakeside he suffered pain in the back, and into the legs, groin, and left testicle. He was initially treated by a chiropractor, Dr. Miller, but was referred to Dr. Lynn E. Foret, an orthopaedist. On March 26, 1984, Dr. Foret concluded that Charles suffered a moderate amount of acute back strain, and advised him not to return to work. Though Dr. Foret did not observe any disc herniation on the x-rays he did detect that Charles had a congenital defect at the transverse process on the right side. During the next two months Charles continued to present complaints compatible with nerve root irritation although the CAT Scan taken revealed no abnormalities. Dr. Foret placed Charles on a no duty status at work until June 12, 1984, when he released him to return to work even though Charles still had mild complaints of lower back pain.
On May 21, 1984, Charles began seeing another orthopaedist, Dr. William Akins. His examination revealed that Charles had muscle spasms on either side of the midline in the lumbar spine, he leaned slightly to the left side, he had a decreased range of motion, complained of pain when going through the various motions requested, and the spinal rhythm test, a coordinated movement between the lumbar spine and pelvis while the patient bends forward and then resumes an erect position, and the Deyerle test, an objective test which is confirmatory for the straight leg raising test, were indicative of a true painful back condition. X-rays reviewed by Dr. Akins indicated a narrowing of the disc space at the L4-5 level, and revealed an abnormal unilateral extended transverse process. At that time he opined that Charles' complaints were compatable with the twisting type injury he sustained, and there was very strong evidence that disc abnormality was the source of the pain. He then concluded that the significant amount of pain Charles exhibited prevented him from carrying out his employment duties. Further tests recommended by Dr. Akins were declined because Charles did not know if his employer's insurance would provide coverage. Dr. Akins again saw Charles on October 9, 1984, and again on November 20, 1984, and continued to recommend that he could not return to work.
Because of continued complaints of disabling back pain Dr. Akins hospitalized Charles at Lake Charles Memorial hospital on February 11, 1985, for evaluation and testing. At that time Charles complained of back pain radiating into both legs, with the left leg being more severe, decreased sexual potency, and a bloody discharge from the rectum. During his ten day hospital stay, Dr. Hooper Nichols and Dr. Gerald Byrd, gastroenterologists, were consulted by Dr. Akins to see if there was any gastrointestinal problem that could be causing Charles' severe back pain; their *1275 tests were within normal limits. A lumbar myelogram, conducted during this hospitalization, demonstrated mild asymmetry of the S-1 nerve root on the left side, and a CAT Scan and discogram produced results which were essentially within normal limits. From an orthopaedic standpoint, Dr. Akins concluded that Charles had back pain for which an etiology could not be determined.
Dr. Akins next saw Charles on April 12, 1985, and again on August 29, 1985, one month prior to trial. At both visits Charles complained of back pain radiating into both legs and reported that the severity of the pain had increased. Although Dr. Akins was not able to pinpoint the source of Charles' orthopaedic problems, he opined that Charles was suffering back pain to such a degree that he was unable to work. Dr. Akins cited the Deyerle test results which were positive for producing pain, as far back as May of 1984, and the restrictive movements of the spinal rhythm test as objective evidence of Charles' complaints. In summation Dr. Akins concluded that given Charles' history, the symptoms exhibited, and the test results, even though some were contradictory, he was disabled from returning to his duties as a bank custodian, and that it was his recommendation that Charles seek treatment at a pain treatment center.
At trial Charles testified that his back pain was worse, he could no longer put his total weight on his left leg, that he used a cane to walk, and that he now walks with a limp. Furthermore, he stated that prior to his work accident at Lakeside he never had trouble with his digestive system and experienced no discharge from his rectum.
After carefully reviewing the record, we conclude that the trial court was not manifestly erroneous in finding Charles temporarily totally disabled.

MEDICAL EXPENSES
Lakeside and Aetna contend that the trial court erred when it cast them liable for Charles' expenses ($2,226.35) incurred for gastrointestinal problems which were not caused by the work-related accident. We disagree.
LSA-R.S. 23:1203(A) provides, in pertinent part, that "In every case coming under this Chapter, the employer shall furnish all necessary medical, surgical, and hospital services, and medicines, or any nonmedical treatment recognized by the laws of this state as legal, ...". Under R.S. 23:1203 a worker's medical expenses are compensable only if they are occasioned by the work-related injury. McCoy v. Kroger Co., 431 So.2d 824 (La.App. 2nd Cir.1983). The claimant must establish his claim for medical benefits and show that they are related to the work accident to a reasonable certainty and by a preponderance of the evidence. Steven v. Liberty Mutual Ins. Co., 509 So.2d 720 (La.App. 3rd Cir.1987).
When Dr. Akins hospitalized Charles, Dr. Nichols, a gastroenterologist, was asked to see whether Charles' lower back pain was caused by inflammatory bowel disease. As the result of these tests Dr. Nichols concluded that Charles had gastric and duodenal ulcers, and although he did not find that Charles suffered from inflammatory bowel disease, he placed him on medication used to treat irritable bowel syndrome, a spastic colon. Upon cross-examination Dr. Nichols testified that although Charles' work-related accident might have had something to do with his spastic colon, he did not think that it had very much to do with his ulcer disease. There is nothing in the record which differentiates between the medical billings for treatment of the ulcer and the spastic colon.
After carefully reviewing the record, we can not say that the trial court was clearly wrong in awarding Charles the full amount of the medical expenses incurred for the tests and treatment rendered by the gastroenterologists.

ATTORNEY'S FEES
Aetna contends that the trial court erred in casting it liable for attorney's fees of $1,500. It argues that Charles failed to make both a demand for payment and satisfactory *1276 proof of loss, and that the gastrointestinal medical bills were clearly unrelated to the accident.
LSA-R.S. 23:1201.2 provides, in pertinent part:
"Any insurer liable for claims arising under this Chapter ... shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject employer or insurer, in addition to the amount of the claim due, to payment of all reasonable attorney's fees for the prosecution and collection of such claim, ..."
Mrs. Mary Mamou, Aetna's medical cost coordinator, testified that although Lakeside received the hospital bill for Charles' February hospitalization at Lake Charles Memorial on March 19, 1985, she did not get a copy of the bill until May 15, 1985. Mrs. Mamou testified that because the medical bill exceeded $3,000 she referred it to an independent medical auditing firm on June 6, 1985, and did not receive the audit report until August 30, 1985. As of the time of trial she had not paid all of the bill because the audit report stated that services were rendered and charged for illnesses at Lake Charles Memorial that were not caused by the work-related accident, and because she had not received a reply from Dr. Akins requested by her on June 6, 1985, that he explain the connexity of the charges for gastrointestinal testing done. Mrs. Mamou further testified that she still had not received a reply from Dr. Akins, and that Dr. Nichols, who had received a similar letter from her, did not reply until the day before trial began.
Counsel for Charles sent Aetna's attorney a letter dated June 15, 1985, detailing the various medical bills which had been submitted, and indicated whether they had been paid. Even though Mrs. Mamou testified that a major part of the reason she had not paid Charles' hospital bill, was because she felt the gastroenterology charges were unrelated to the worker's compensation claim, we conclude that Aetna had a duty to further investigate the various medical bills, e.g., depositions or interrogatories. Mrs. Mamou testified that she communicated none of her concerns in this regard to Aetna's in-house counsel. Her testimony concerning another $75 medical bill which was unpaid tracked the reasoning just outlined hereinabove.
After carefully reviewing the record, we find that the trial court was not manifestly erroneous in its conclusion that Aetna was arbitrary and capricious in not paying the medical expenses within 60 days of June 15, 1985, the date Charles' attorney made demand upon Aetna's counsel to resolve its nonpayment of the various medical bills.
Although we find the trial court's award of attorney's fees was proper, when the employer is insured, only the insurer, not the employer, is liable for the payment of the attorney's fees. R.S. 23:1201.2. Accordingly, the judgment shall be amended, insofar as it awards attorney's fees against Aetna and Lakeside, in solido, to grant judgment only against Aetna for the statutory attorney's fees in the amount of $1,500.
For the foregoing reasons, the judgment of the trial court is affirmed except to amend that portion of it which awards Chester L. Charles, Jr. attorney's fees in the amount of $1,500 against Lakeside National Bank and Aetna, in solido. The judgment is amended to cast Aetna alone for the attorney's fees in the sum of $1,500. Costs of this appeal are assessed one-half to Lakeside and one-half to Aetna.
AFFIRMED AS AMENDED AND RENDERED.